UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

APR 1 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| VINCENT PITTS<br>1106 Century Oak Drive<br>Fredericksburg, VA 22401<br>(540) 371 2193<br><br>        Plaintiff,<br><br><br>VS.<br><br><br>ALBERTO GONZALES<br>ATTORNEY GENERAL,<br>UNITED STATES DEPARTMENT<br>     OF JUSTICE  - FEDERAL<br>BUREAU OF INVESTIGATION<br>   950 Pennsylvania ave<br>washinglo, PC 20530 -<br>        Defendants<br>   935 Pennsylvania Ne<br>   washinglo, AC 20535 | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>;<br>;<br>}<br>}<br>}<br>}<br>}<br>}<br>} |

                                    Case: 1:07-cv-00704
                                    Assigned To : Kennedy, Henry H.
                                    Assign. Date : 4/18/2007
                                    Description: PITTS v. GONZALES

## COMPLAINT

1. Plaintiff resides at:

    Vincent Pinkney Pitts ("Pitts")

    1106 Century Oak Drive

    Fredericksburg, VA 22401

    (540) 371 2193

2. Defendant is located at:

    Department of Justice, Federal Bureau of Investigation ("FBI" or "Agency")

    Room 7901

    935 Pennsylvania Ave, NW BLDG JEH

Washington, DC 20535

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended for employment discrimination. Equitable and other relief is sought.

4. The acts complained of in this suit concern:

   a. Securing of false and fabricated background security clearance information.

   b. Marked as "not suitable" for further employment.

5. Defendant's conduct is discriminatory with respects to the following

   a. Race or color (African-American).

   b. Retaliation (including defamation).

6. The basic facts surrounding the plaintiff's claim of discrimination are:

   I, Vincent Pinkney Pitts ("Pitts"), Plaintiff, was defamed, discriminated (African-American) and retaliated by the Federal Bureau of Investigation ("FBI" or "Agency"), Defendant prior to, during, and after the course of a FBI Background Investigation surrounding events that never happened (Exhibits J, L, O, P, and Q) and never justified (The Plaintiff was an United States Naval Officer on official Navy military orders and jury duty in Fredericksburg, VA [Exhibits H and I ]), to include prior EEO activity (Exhibits O and P ).

   The FBI stated that the plaintiff mishandled a classified document that caused him to be "not suitable". The plaintiff was never authorized/issued a classified document, never left a document of any type unattended, was never issued a GSA security container to secure such document, was under a DSS Top Secret clearance re-investigation

(completed on September 23, 2003 and finalized on or about Feb 17, 2004) and escorted while on FBI facilities (Exhibits J, L and P).

The plaintiff's FBI background investigation (Exhibits C and K) during the background period from November 2003 to February 2004 contained false and fabricated information from five (5) or more individuals whose statements are conflicting in nature and of events that never happened and was never there (Exhibits J, L, O, P, and Q with supporting Exhibits N, M, R and S). Also, FBI stated that the plaintiff's background was not completed; however, information provided contradicts that entirely (Exhibits C, K, M, and N).

These statements are untrue and are intentionally and purposely fabricated and falsely recorded to defame the plaintiff and his spouse who is also a covered individual who participated in protected activity. What is being described of the plaintiff in not just discriminatory, but retaliation in the matter of "character assassination".

Furthermore, these individuals were used for the sole purpose to prevent the plaintiff from pursuing his legal rights of due process in a court of law. The FBI clearly used these untrue and fabricated statements as the sole purpose to discriminate/retaliate (reprisal) against the plaintiff, to dismiss Pitts' hearing and to prevent the plaintiff from further defending himself.

During the initial dismissal of the plaintiff request for a hearing, Federal Equal Employment Opportunity Commission (EEOC) pointed to abstract, obscure, and false

comments taken from statements submitted by the FBI for upholding the Agency's

motion to dismiss the plaintiff's hearing (Exhibits C and K). Also, throughout the course

of the EEO FBI investigation to completion, these individuals' statements were used with

other false, misdirected, and misleading statements to further discriminate, retaliate, and

defame the plaintiff (Exhibits C and K).

Overall the FBI acted with malice and reckless disregard and indifference to the

federally protected rights of the plaintiff.

However, during the course of the plaintiff's EEOC appeal process and

reconsideration, EEOC stated that none of the three (3) FBI agency officials responsible

for processing plaintiff's application were aware of his race. Even though there were

information submitted (Exhibits B,C, J, and T) that did contradict statements and showed

misdirected or influenced actions done by these three individuals involving the "not

suitable" action placed on the plaintiff by the FBI's adjudication branch.

7. The alleged discrimination occurred on or about February 2004.

8. The plaintiff filed charges with the Federal Bureau of Investigation (FBI) regarding

   defendant's alleged discriminatory conduct on or about March 2004 (Exhibit A) and

   was finalized on or about June 2004 (Exhibits A and B ).

9. The Equal Employment Opportunity Commission issues a Notice-of-Right-to-Sue

   letter (Exhibit G), which was received by the plaintiff on or about:

   a. Original Appeal Decision received:  Dec 23, 2006 (Exhibit D)

b. Reconsideration Accepted: Jan 20, 2007 (Exhibit E)

c. Follow-up Status: Mar 14, 2007 (Exhibit F)

d. Reconsideration Final status and Notice-of-Right-To-Sue Letter: Mar 29,

2007 (Exhibit G).

10. Plaintiff hereby demands a jury for all claims for which a jury is permitted.

11. WHEREFORE, Plaintiff prays that the Court grant such relief as may be appropriate,

including injunctive orders, damages, costs, securing of false background security

information, and attorney fees.

DATED: _April 18, 2007_                    _____

                                           SIGNATURE OF PLAINTIFF


                                           _Vincent Pitts_

                                           PLAINTIFF' NAME

V. Pitts vs. DOJ (FBI)                                              5 of 6

**Exhibits**

    A. Complaint of Discrimination, Initial Mar 19, 2004 and Final Jun 21, 2004

    B. Request for Amend Complaint within 15 days window, August 26, 2004

    C. DOJ, Office of Information and Privacy, Sep 29, 2004

    D. Original Appeal Decision received: Dec 23, 2006

    E. Reconsideration Accepted: Jan 20, 2007

    F. Follow-up Status: Mar 14, 2007

    G. Reconsideration Final status and Notice-of-Right-To-Sue Letter: Mar 29, 2007

    H. Jury Duty at Fredericksburg, VA, Sep 24, 2003

    I. Navy Military Orders, Sep 07-13, 2003

    J. Letter to FBI Adjudication (Not an appeal). Feb 27, 2004

    K. Request for FOIA, Mar 8, 2004

    L. Email from EDO/Aera Co-worker, Sep 30, 2003

    M. FBI SCI Letter, Dec 15, 2003

    N. FBI Polygraph Results with other information, Feb 13, 2004

    O. Delores Pitts, Spouse, Deposition, Jul 6, 2005

    P. Vincent Pitts, Declaration, Aug 22, 2005

    Q. TITAN/RPI (Mar 21, 2004), SAIC (May 26, 2004), FBI Person (Aug 12, 2003 & Dec 12, 2004), FBI Personnel (Aug 22, 2003, Dec 10/18, 2003, and Jan 13, 2004)

    R. Family Statements (3)

    S. Friends and Co-workers Statements (7)

    T. Voice Recoding Feb 25/26, 2004



Character Reference for Mr. Vincent Pitts.

My name is Timothy Oh. I am a naturalized U. S. citizen, originally from South Korea, and I currently have a Secret clearance from Department of Defense.

I have first met Mr. Vincent Pitts in November 2000. He was the manager of the IT department at Interactive Media Corporation (IMC), and he personally interviewed me and hired me as a senior developer. As I started working an IMC IT development team, it became clear to that Vincent was a not your average manager. He had great technical skills and background. Furthermore, he has provided guidance and assistance for every single member of IT department. When one of the employees had to leave due to the visa situation, Vincent went out of his way to find her a new job. One more than one occasion, he had came back to work at late night to help me with my projects. I consider him as a mentor.

Vincent left IMC and soon after, I left also and followed him to Verestar. Verestar did not have an IT department, and Vincent was already beginning to build a IT department. Initially, our IT department consisted of Vincent (Manager), me (Senior Developer), Anna Luong and Sumona. Our team had already built and deployed two key projects for Verestar, and was working on integrating Verestar satellite order system. During this time, Verestar was going through some reorganization.

Andy Baer was hired as a "CIO", and soon after, he brought over two of his former colleague. Neither of these two people had more relevant experience, skills nor knowledge required for the IT work, yet, both of them were hired at positions higher than Vincent. I had more relevant experience and skills then them. I strongly believe that this was a blatant case of discrimination. These new hires were given preferential over existing employees of IT department, who happened to be minorities. Vincent left the company few weeks later, fully aware that he was clearly discriminated against. I even told Vincent that he should file a formal complaint or take other legal recourses.

We had all the core projects developed and were in process of beta testing. After new "CIO" was hired, he cancelled all existing project, and forced all development team to use totally different methodology and technology. About two months after the transition, they started to give me unreasonable projects, and when I brought these matter over to our "CIO", he wanted to terminate my employment. I had been a model employee, and had an excellent performance review before all this. Andy told me that he did not care

about the previous review. Then, I had to go to HR department and discuss this matter with Sonya Ousley, our HR director, and only after that, they agree to a lay off. Few months after I was laid off, the other employees were layed off also. Verestar's management had clearly discriminated Vincent, my coworkers and me.

I declare under oath and penalties of perjury that the foregoing is true and correct.

Executed on: August 4, 2005.

Timothy J. Oh

## CIVIL COVER SHEET

44
v.(/85 DC)

**(a) PLAINTIFFS**

*Vincent P Pitts*

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _88888_
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

*ALBERTO GONZALES, ATTORNEY GEN (USIHR)*
*Federal Bureau o Investigation*

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** _11001_
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
~~TRACT OF LAND INVOLVED~~

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Case: 1:07-cv-00704
Assigned To : Kennedy, Henry H.
Assign. Date : 4/18/2007
Description: PITTS v. GONZALES

### BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ☑ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question
  (U.S. Government Not a Party)
- ☑ 2 U.S. Government Defendant
- ☐ 4 Diversity
  (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP ~~BOX~~
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) ~~ONLY!~~

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**A. Antitrust**

10 Antitrust

**☐ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff))
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**E. General Civil (Other) OR ☐ F. Pro Se General Civil**

**Property**
- 10 Land Condemnation
- 20 Foreclosure
- 30 Rent, Lease & Ejectment
- 40 Torts to Land
- 45 Tort Product Liability
- 90 All Other Real Property

**Personal Property**
- 70 Other Fraud
- 71 Truth in Lending
- 30 Other Personal Property Damage
- 35 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ❑ G. *Habeas Corpus/ 2255* | ❑ H. *Employment Discrimination* | ❑ I. *FOIA/PRIVACY ACT* | ❑ J. *Student Loan* |
|---|---|---|---|
| ❑ 530 Habeas Corpus-General<br>❑ 510 Motion/Vacate Sentence | ❑ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ❑ 895 Freedom of Information Act<br>❑ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ❑ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ❑ K. *Labor/ERISA (non-employment)* | ❑ L. *Other Civil Rights (non-employment)* | ❑ M. *Contract* | ❑ N. *Three-Judge Court* |
|---|---|---|---|
| ❑ 710 Fair Labor Standards Act<br>❑ 720 Labor/Mgmt. Relations<br>❑ 730 Labor/Mgmt. Reporting & Disclosure Act<br>❑ 740 Labor Railway Act<br>❑ 790 Other Labor Litigation<br>❑ 791 Empl. Ret. Inc. Security Act | ❑ 441 Voting (if not Voting Rights Act)<br>❑ 443 Housing/Accommodations<br>❑ 444 Welfare<br>❑ 440 Other Civil Rights<br>❑ 445 American w/Disabilities-Employment<br>❑ 446 Americans w/Disabilities-Other | ❑ 110 Insurance<br>❑ 120 Marine<br>❑ 130 Miller Act<br>❑ 140 Negotiable Instrument<br>❑ 150 Recovery of Overpayment & Enforcement of Judgment<br>❑ 153 Recovery of Overpayment of Veteran's Benefits<br>❑ 160 Stockholder's Suits<br>❑ 190 Other Contracts<br>❑ 195 Contract Product Liability<br>❑ 196 Franchise | ❑ 441 Civil Rights-Voting (if Voting Rights Act) |

ORIGIN
✓ Original Proceeding ❑ 2 Removed from State Court ❑ 3 Remanded from Appellate Court ❑ 4 Reinstated or Reopened ❑ 5 Transferred from another district (specify) ❑ Multi district Litigation ❑ 7 Appeal to District Judge from Mag. Judge

. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e

I. REQUESTED IN COMPLAINT ❑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 DEMAND $ Check YES only if demanded in complaint JURY DEMAND: YES ❑ NO

II. RELATED CASE(S) IF ANY (See instruction) ❑ YES ✓NO If yes, please complete related case form.

TE SIGNATURE OF ATTORNEY OF RECORD April 18, 2007

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of t for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips ompleting the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

st/js-44.wpd





LAW OFFICES OF
## OWAIIAN M. JONES
POST OFFICE BOX 8320
FREDERICKSBURG, VIRGINIA 22404-8320

Fax: (540) 373-9110
All Correspondence To Above

June 30, 2004

Telephone (540) 373-3312
(703) 690-1555

Gabam Square Office Park
redericksburg, VA 22405

VIA OVER-NIGHT MAIL

Equal Employment Opportunity Officer
Federal Bureau of Investigation
Room 7901
935 Pennsylvania Avenue, N.W.
Washington, D.C. 20535-0001

Re:    Vincent Pitt's Complaint of Discrimination

Dear Officer:

Please find attached Mr. Vincent Pitt's Complaint of Discrimination based on race, *inter alia*, against the Federal Bureau of Investigation. Please be advised that the Law Offices of Owaiian M. Jones will represent Mr. Pitts during the investigation process. As the same commences, please do not hesitate to contact me with any questions.

Thank you for your time and attention to this matter. Meanwhile, I look forward to future interactions with you.

Very truly yours,

Chad M. Rinard

Enclosures (Complaint of Discrimination and its attached documents)
cc:    Vincent Pitts
        1106 Century Oak Drive
        Fredericksburg, VA 22401
        (Via first-class mail)

B

B

# OWAIIAN M. JONES

POST OFFICE BOX 8320
FREDERICKSBURG, VIRGINIA 22404-8320

Fax: (540) 373-9110
All Correspondence To Above

4 Chatham Square Office Park
Fredericksburg, VA 22405

**August 26, 2004**

Telephone (540) 373-3312
(703) 690-1555

**VIA CERTIFIED AND FIRST-CLASS MAIL**
Ms. Veronica Ventura
EEO Officer
U.S. Department of Justice
Federal Bureau of Investigation
935 Pennsylvania Ave., N.W.
Washington, D.C. 20535-0001

    Re:   Mr. Vincent Pitts

Dear Ms. Ventura:

    Thank you for your August 6th letter regarding Mr. Pitts and his discrimination complaint. In response, please accept this letter being sent on the fifteenth day since our receipt of your letter.

    We believe your description of the FBI's discrimination against Mr. Pitts based on his race to be accurate but not complete. While we agree that Mr. Pitts' conditional offer of employment was rescinded due to his race, we add that Mr. Pitts further was discriminated against by FBI employees throughout the conduct of the background investigation allegedly supporting the rescission. Accordingly, we suggest the supplementing the complaint as follows:

        **Whether Mr. Pitts was discriminated against based on his race (African American) [1] when by letter dated February 19, 2004, he learned that his conditional offer of employment for the position of Information Technology Specialist was rescinded due to information obtained during his background investigation, and [2] when FBI employees involved in such background investigation defamed or otherwise wronged Mr. Pitts.**

    We believe the second allegation advances that race-motivated actions throughout the background investigation affected the decision to hire (or not to hire) Mr. Pitts.

    We understand the charge of discrimination generally is the only notice an

employer may have of the underlying discrimination claim. We aver the scope of the employer's notice should be large enough so that it is inclined to review Mr. Pitts' background investigation as well as the decision regarding the hiring of Mr. Pitts. If you are so inclined, please supplement Mr. Pitts' complaint as expressed herein.

I thank you for your time and attention to this matter. If you have any questions or concerns, please do not hesitate to contact me. Meanwhile, I look forward to future interactions with you.

Very truly yours,

Chad M. Rinard

cc:   Mr. Vincent Pitts
      1106 Century Oak Drive
      Fredericksburg, VA 22401
      (Via first-class mail)





**Office of Information and Privacy**

*Telephone: (202) 514-3642*

*Washington, D.C. 20530*

SEP 29 2004

Mr. Vincent P. Pitts
1106 Century Oaks Drive
Fredericksburg, VA 22401

Re: Appeal No. 04-2548
Request No. 993045
RLH:ADW:ALB

Dear Mr. Pitts:

You appealed from the action of the Headquarters Office of the Federal Bureau of Investigation on your request for access to records concerning your application for a position with the FBI as an "IT Specialist."

After carefully considering your appeal, I have decided to affirm the FBI's action on your request. You are the subject of one Headquarters main file entitled Support Applicant Investigations.

Certain information was properly withheld from you because it is exempt from the access provision of the Privacy Act of 1974 pursuant to 5 U.S.C. § 552a(k)(6), which concerns testing or examination material used solely to determine individual qualifications for appointment or promotion in the federal service, the release of which would compromise the objectivity or fairness of the testing or examination process. See 28 C.F.R. § 16.96 (2004). This information is also properly withheld pursuant to:

    5 U.S.C. § 552(b)(2), which concerns matters that are
    related solely to internal agency practices; and

    5 U.S.C. § 552(b)(7)(E), which concerns records or
    information compiled for law enforcement purposes, the
    release of which would disclose techniques and procedures
    for law enforcement investigations.

Still other information was properly withheld from you pursuant to 5 U.S.C. § 552a(j)(2). See 28 C.F.R. § 16.96(a) (2004). This information is also properly withheld pursuant to 5 U.S.C. § 552(b)(7)(C), which pertains to records or information compiled for law enforcement purposes, the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.



-2-

The only other information that was withheld from you consists of the names, telephone numbers, and facsimile numbers of FBI special agents and employees. These names are not subject to access under the Privacy Act of 1974. Accordingly, your access rights are limited to those provided by the Freedom of Information Act. This identifying material was properly withheld from you under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(C). I have also determined that none of the withheld material is appropriate for discretionary release.

In your appeal letter, you assert that the FBI failed to provide you with all records responsive to your request. The FBI has provided you with the releasable portions of all responsive records that it could locate in its files. Therefore, it has been determined that the FBI's response is correct.

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Richard L. Huff
Co-Director





**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C. 20036

Vincent P. Pitts,
Complainant,

v.

Alberto Gonzales,
Attorney General,
Department of Justice,
Agency.

Appeal No. 0120064548[1]

Agency No. F045893

Hearing No. 100a50622x

## DECISION

Pursuant to 29 C.F.R. § 1614.405, the Commission accepts complainant's appeal from the agency's June 13, 2006 final order concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.* Complainant alleged that the agency discriminated against him on the basis of race (African-American) when his conditional offer of employment as an Information Technology Specialist was rescinded due to information obtained during a background investigation. The Administrative Judge deciding the case found that none of the three Federal Bureau of Investigation (FBI) agency officials responsible for processing complainant's application were aware of his race.

After a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the Equal Employment Opportunity Commission to affirm the agency's final order, because the Administrative Judge's issuance of a decision without a hearing was appropriate and a preponderance of the record evidence does not establish that discrimination occurred.

---

[1] Due to a new Commission data system, this case has been redesignated with the above-referenced appeal number.

2                                        0120064548

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

     1.    The appellate decision involved a clearly erroneous interpretation of material fact or law; or

     2.    The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

4                                          0120064548

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Vincent P. Pitts
1106 Century Oak Dr
Fredericksburg, VA  22401

Veronica Venture, Director, EEO Staff
Department of Justice (FBI)
Room 7901
935 Pennsylvania Ave., NW  BLDG. JEH
Washington, DC  20535

DEC 2 1 2006
Date

Equal Opportunity Assistant

3

0120064548

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

DEC 2 1 2006

Date



E



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C. 20036**
Jan 29, 2007

REQUEST FOR RECONSIDERATION

Vincent P Pitts
1106 Century Oak Dr
Fredericksburg, VA 22401

Re: Pitts v. Justice, Dept of - FBI
Docket # : 0520070267
Assoc # : 0120064548
Filed Date: 01/20/07
Agency Number(s): F045893

Dear Mr. Pitts:

The above request for reconsideration has been docketed and assigned the docket number listed above.  Please refer to the docket number on all correspondence to this office.

The Commission, in its discretion, may grant the request if the party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the decision will have a substantial impact on the policies, practices, or operation of the agency. 29 C.F.R.1614.405(b) (1) & (2).

You were required to submit any supporting documents or brief at the time the request was filed.  The opposing party shall have 20 days from the date of service in which to submit any brief or statement in opposition.  Such service must be included with the submission to the Office of Federal Operations.  The Commission will accept statements or briefs in opposition to a request by facsimile transmission (Fax Number 202-663-7022) provided they are no more than ten (10) pages long.

If you have questions regarding the processing of your appeal, please call the EEOC, Office of Federal Operations at (202) 663-4599 and ask to speak to the Attorney of the Week.

Sincerely,

Robert J. Barnhart, Director
Compliance and Control Division
Office of Federal Operations

CC:
Justice, Dept of - FBI
Dir., EEO Staff   Room 7901
935 Penn Ave NW   Bldg JEH
Washington, DC 20535

(2)







**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C.  20036

MAR 1 4 2007

Vincent P. Pitts
1106 Century Oak Drive
Fredericksburg, VA 22401

RE:    *Vincent P. Pitts v. Department of Justice*
         EEOC Appeal No. 05-2007-0267

Dear Mr. Pitts:

This is in response to your letter dated March 3, 2007, requesting the status of the above-referenced appeal.

Your appeal is currently pending assignment to an attorney who will prepare the draft decision. When the Commission issues this decision after appropriate supervisory review, we will send it to your address of record.  Unfortunately, we are unable to provide you with a time frame as to when you can expect to receive it.  The EEOC receives a large number of appeals, and due to the varying complexity of each case, it is difficult to predict when a final decision will be issued. Please rest assured, however, that when an attorney is assigned to your case he or she will review all of the evidence of record and will put forth every effort to process your appeal as expeditiously as possible.

We hope this information is helpful to you.

Sincerely,

Lori Grant, Acting Chief
Intake Section
Compliance and Control Division





**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C. 20036**


Vincent P. Pitts,
Complainant,

v.

Alberto Gonzales,
Attorney General,
Department of Justice,
Agency.

Request No. 0520070267

Appeal No. 0120064548

Hearing No. 100-2005-00622X

Agency No. F045893

## DENIAL OF REQUEST FOR RECONSIDERATION

Complainant timely requested reconsideration of the decision in *Vincent P. Pitts v. Department of Justice (FBI)*, EEOC Appeal No. 0120064548 (December 21, 2006). EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 0120064548 remains the Commission's final decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate

2                                    0520070267

United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you **file a civil action, you must name as the defendant** in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*
_____
Carlton M. Hadden, Director
Office of Federal Operations

MAR 2 7 2007
_____
Date

3                                    0520070267

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Vincent P. Pitts
1106 Century Oak Dr
Fredericksburg, VA  22401

David A. Branch
1825 Connecticut Avenue, NW
Suite 690
Washington, DC 20009

Veronica Venture, Director, EEO Staff
Department of Justice (FBI)
Room 7901
935 Pennsylvania Ave., NW  BLDG. JEH
Washington, DC  20535

MAR 2 7 2007
_____
Date

_____
Equal Opportunity Assistant

H

H



**SEPTEMBER 2003 JURY PANEL**

*Vincent Pitts*

Below you will find the scheduled Jury dates for **SEPTEMBER 2003**. Should any of these cases be settled ahead of time, you will be notified. **HOULD ANY ADDITIONAL DATES BE SET, YOU WILL BE ADVISED.**

**LEASE PLAN ON ATTENDING EACH OF THESE DATES UNLESS OTHERWISE NOTIFIED BY THE SHERIFF'S OFFICE. (REPORT TO THE REDERICKSBURG CIRCUIT COURT-PLEASE USE FRONT ENTRANCE)**

MONDAY, SEPTEMBER 8, 2003 AT 8:30 A.M.

UESDAY, SEPTEMBER 9, 2003 AT 8:30 A.M.

WEDNESDAY, SEPTEMBER 10, 2003 AT 8:30 A.M.

THURSDAY, SEPTEMBER 11, 2003 AT 8:30 A.M.

FRIDAY, SEPTEMBER 12, 2003 AT 8:30 A.M.

MONDAY, SEPTEMBER 15, 2003 AT 8:30 A.M.

UESDAY, SEPTEMBER 16, 2003 AT 8:30 A.M.

WEDNESDAY, SEPTEMBER 17, 2003 AT 8:30 A.M.

THURSDAY, SEPTEMBER 18, 2003 AT 8:30 A.M.

WEDNESDAY, SEPTEMBER 24, 2003 AT 8:30 A.M.

*on military training 8-13 sep 03*

*Jury Day for Vincent Pitts*

*15-18 sep 2003 - was not needed*

*24 sep 2003 → was there*

If you should have a problem with any of these dates, please call the Sheriff's Office at 372-1056 and we will try to help, **if possible**. There is a umber you can call with a recorded message 24 hours a day should you be in doubt regarding a scheduled Jury date. Call the night before each Jury sc ou are up to date, the dates sometimes are cancelled. **The number is 372-9411.**

**PLEASE WEAR APPROPRIATE COURT ATTIRE. NO CELL PHONES OR PAGERS ALLOWED.**

S





# ORIGINAL

1572
NOMB/917796/0
SSN: XXX-XX-T67370
12 JUL 2003

FROM: COMMANDING OFFICER NRPC WASHINGTON
TO:   LCDR VINCENT P PITTS, USNR, XXXXXXX/1115
      1106 CENTURY OAK DR
      FREDERICKSBURG, VA 224010000

SUBJ: ORDERED TO ANNUAL TRAINING; CASE OF LCDR VINCENT P PITTS, USNR,
      XXXXXXX/1115



1. REPORT TO THE COMMANDING OFFICER, OPNAV, 2000 NAVY PENTAGON, WASHINGTON,
DC 203502000 NO LATER THAN 0730 ON 08 SEP 2003 FOR DUTY WITH LCS, UIC:  00011.
PERIOD OF DUTY:  07 SEP 2003 TO 13 SEP 2003 FOR 7 DAYS.  YOU ARE A MEMBER OF
RESERVE UIC:  86106.  IF FOR ANY REASON YOU ARE UNABLE TO EXECUTE THESE
ORDERS, RETURN THEM TO YOUR ADMINISTRATIVE PARENT COMMAND NOTING THE REASON
FOR RETURN.  WHILE PERFORMING DUTY UNDER THESE ORDERS, YOU ARE SUBJECT TO THE
UNIFORM CODE OF MILITARY JUSTICE (UCMJ).

2. UPON COMPLETION OF SUBJECT DUTY, WITH THE EXCEPTION OF BACK TO BACK
ORDERS, YOU WILL RETURN TO THE ADDRESS INDICATED AFTER YOUR HOME AND UPON
ARRIVAL YOU WILL STAND RELEASED FROM SUBJECT DUTY (JFTR U7150.A1).  FOR BACK
TO BACK ORDERS, UPON COMPLETION OF THE FINAL SET OF ORDERS, YOU WILL RETURN TO
THE ADDRESS INDICATED AFTER YOUR HOME AND UPON ARRIVAL, YOU WILL STAND
RELEASED FROM DUTY (JFTR U5120.A AND U4105.F).

3. IF THESE ORDERS START IMMEDIATELY AFTER AN INACTIVE DUTY ORDER (IDTT), YOU
ARE ADVISED THAT THESE ORDERS MUST START FROM YOUR HOME ADDRESS (PHA).
FAILURE TO START FROM HOME MAY RESULT IN PAY AND/OR ENTITLEMENT ISSUES WHEN
LIQUIDATING YOUR ORDERS.

4. APPROPRIATION FOR THE PERIOD OF 07 SEP 2003  13 SEP 2003 (7 DAYS) IS:
PAY and ALLOWANCE:
AA  1731405.7210 011  00072  0 068566   2D  T67370   86106371500A 0000155318
PER DIEM:
AC  1731405.7210 021  00072  0 068566   2D  T67370   86106374501E 0000034700
TRAVEL :
AB  1731405.7210 021  00072  0 068566   2D  T67370   86106374500E 0000008032
FICA :
AD  1731405.7210 012  00072  0 068566   2D  T67370   86106371501A 0000009868
FSC FOR THIS PERIOD OF DUTY IS: 2003000720SMA

5. PERSONNEL ACCOUNTING SUPPORT:  PERSUPPDET WASHINGTON DC

6. TRAVEL VIA PRIVATELY OWNED CONVEYANCE (POC) TO
WASHINGTON, DC (07 SEP 2003) AND
FREDERICKSBURG, VA (13 SEP 2003)
IS AUTHORIZED AS ADVANTAGEOUS TO THE GOVERNMENT.  REIMBURSEMENT FOR MILEAGE
IS AUTHORIZED AT A RATE OF 0.360 PER MILE FOR THE OFFICIAL DISTANCE.  THE
TRAVEL AMOUNT CITED WITHIN THESE ORDERS REFLECTS A COST ESTIMATE BASED ON DTOD
MILEAGE BETWEEN PLEAD/PHA AND DUTY LOCATION (JFTR U3305.A1).

7. RENTAL CAR NOT AUTHORIZED AT WASHINGTON, DC (07 SEP 2003 THRU 13 SEP
2003).

8. QUARTERS ARE AVAILABLE AT
WASHINGTON, DC AT $50.00 PER DAY (07 SEP 2003 THRU 13 SEP 2003).  IF QUARTERS
ARE NOT AVAILABLE CONTACT THE APPROPRIATE MILITARY REPRESENTATIVE FOR A
WRITTEN STATEMENT REGARDING THE AVAILABILITY OF ADEQUATE GOVERNMENT QUARTERS
AT THE PLACE OR PLACES AT WHICH THE SUBJECT DUTY IS PERFORMED (JFTR U4125).
MAX DAILY LODGING IS $150.00 FOR WASHINGTON, DC.

Reported:  0707  8 SEP 2003

CDR, USNR

1600   12 Sep 03

# ORIGINAL

1572
NOWS/917796/0
SDN: N8610603RT67370
12 JUL 2003

SUBJ: ORDERED TO ANNUAL TRAINING; CASE OF LCDR VINCENT P PITTS, USNR,
~~~~~~~/1115

9.  USE OF GOVERNMENT MESS FACILITIES IS DIRECTED AT
WASHINGTON, DC (07 SEP 2003 THRU 13 SEP 2003), IF AVAILABLE.  IF NOT
AVAILABLE, YOU WILL OBTAIN A STATEMENT FROM THE APPROPRIATE MILITARY
REPRESENTATIVE REGARDING THE AVAILABILITY OF MESS FACILITIES AT THE PLACE OR
PLACES AT WHICH THE SUBJECT DUTY IS PERFORMED (JFTR U4400).  MAX DAILY M/IE IS
$50.00 FOR WASHINGTON, DC.

10. THE TRAVEL AND TRANSPORTATION REFORM ACT (TTRA) OF 1998 STIPULATES THAT
THE GOVERNMENT SPONSORED, CONTRACTOR ISSUED TRAVEL CARD SHALL BE USED BY ALL
U.S. GOVERNMENT PERSONNEL (CIVILIAN AND MILITARY) TO PAY FOR COSTS INCIDENT TO
OFFICIAL BUSINESS TRAVEL UNLESS SPECIFICALLY EXEMPTED BY AUTHORITY OF THE
ADMINISTRATOR OF GENERAL SERVICES OR THE HEAD OF THE AGENCY.  YOU ARE A GTCC
CARDHOLDER.  YOU ARE NOT EXEMPT FROM MANDATORY USE PROVISIONS OF THE TTRA.
YOU ARE AUTHORIZED TO OBTAIN AN ADVANCE FROM AN ATM USING YOUR GTCC.  YOU MUST
CLAIM ALL ATM FEES ON YOUR TRAVEL CLAIM (DODFMR VOL 9, CHAP 3, PARA 030302).
MEMBERS UTILIZING THE GOVERNMENT TRAVEL CHARGE CARD (GTCC) ARE REMINDED TO
UTILIZE SPLIT DISBURSEMENT WHEN SUBMITTING YOUR TRAVEL CLAIM.  FAILURE TO DO
SO MAY RESULT IN A DELAY IN THE PROCESSING OF YOUR CLAIM.

11. YOUR DIRECT DEPOSIT INFORMATION MUST BE VERIFIED DURING YOUR CHECK-IN
PROCESS FOR THESE ORDERS.  PLEASE ENSURE YOU HAVE BANK ROUTING INFORMATION OR A
DEPOSIT SLIP WITH YOU

12. IF YOU ARE LESS THAN 50 YEARS OLD, YOU ARE REQUIRED TO OBTAIN A PHYSICAL
EXAMINATION EVERY FIVE YEARS.  UPON REACHING AGE 50, THE REQUIREMENT IS EVERY
TWO YEARS.  YOUR LAST PHYSICAL WAS COMPLETE ON 07 OCT 2002.  IF YOUR PHYSICAL
HAS EXPIRED, YOU MUST SUBMIT A STANDARD FORM 88 (SF88) AND STANDARD FORM 93
(SF93) PHYSICAL EXAMINATION TO YOUR PARENT COMMAND.  NONCOMPLIANCE COULD
RESULT IN ANY FUTURE REQUESTS FOR DUTY BEING DENIED.

13. WHILE PERFORMING SUBJECT DUTY YOU ARE AUTOMATICALLY COVERED BY SGLI IN THE
AMOUNT OF $250,000 UNLESS YOU HAVE MADE AN ALTERNATE ELECTION PRIOR TO THE
ISSUANCE OF THESE ORDERS.

14. FOR LODGING RESERVATIONS CONTACT SATO SAN ANTONIO AT 18005769327, OR FAX
REQUEST TO 18003306488.

15. ANY PHYSICAL INJURY OR MENTAL ILLNESS THAT WOULD PROHIBIT, HAMPER OR
PRECLUDE THE EXECUTION OF THESE ORDERS MUST BE REPORTED TO THE MEDICAL
DEPARTMENT REPRESENTATIVE FOR DETERMINATION OF PHYSICAL OR MENTAL
QUALIFICATION PRIOR TO EXECUTION.

16. PLEASE CALL THESE PHONE NUMBER IF YOU HAVE ISSUES REGARDING
ORDERS/TRAVEL/BERTHING RESERVATIONS:
* NOWS HELP DESK AT 1-800-537-4617
* CNRFC N33 TRAVEL COUNSELOR AT 1-877-583-8671.
* SATO HELP DESK IN SAN ANTONIO, TX, 24 HOURS A DAY, 7 DAYS A WEEK, AT 1-800-
359-9999.
* BQ RESERVATIONS FOR PERSONNEL WHO TRAVELED VIA POV OR GOVERNMENT AIR MAY
CALL 1-800-576-9327

                                        G. MASKERINK
                                        BY DIRECTION



J



Vincent Pitts
1108 Century Oak Drive
Fredericksburg, VA 22401

February 27, 2004

Therese E. Rodrique, Chief

Federal Bureau of Investigation
935 Pennsylvania Avenue, Northwest
Washington, D.C. 20535-0001

Re: Your enclosed letter dated February 19, 2004

Dear Madam:

I, Vincent Pitts, applied for a position GS-14 (IT Specialist) with the Federal Bureau of Investigation (FBI) when I was told by the FBI Unit senior management I supported at the time and my direct supervisor that the FBI was no longer going to continue this particular government contract with EDO/Aera and seek other contract ventures. Around November 7, 2003, I received and gladly accepted the offer. I was more than thrilled and excited to become a FBI employee. The work I performed as a government contractor with the FBI was not just a job to me, but the passion of performing a great service for my country and giving the FBI the Information Technology skills and talents that I possessed and developed throughout my years of schools and job assignments. The work I did and achieved for the FBI unit I supported was praised (and still is) by all I supported, and cut short by reasons not of my own doing.

My reason for writing this response is that I am very confused on the statement that caused my conditional offer of appointment letter to be rescinded. I was never briefed on this nor was it brought up in any of my visits with FBI personnel doing my background interviews. I have been in direct communications with all my FBI investigators, application coordinators, hiring manager (indirectly), FBI personnel who endorsed me for the position, and Ms. Kathy Hennessey. Based on the conversation I had with Ms. Hennessey on February 20 2004, I passed my poly (everything looks good) and it should be no time now before I receive my appointment letter to start work. From that, I gathered that everything was going great. Also, as stated by the Richmond's FBI applications coordinator on February 23, 2004, if there were any red flags, she would have known personally by now and I would have been given a chance to discuss and defend it.

I have been honest and straightforward in my FBI investigations, including passing my poly and taking pride and dedication of ensuring I work at the highest level of integrity, respect and dedication. What ever this is, it not only stains my outstanding professional and personal careers, but also my career as an United States Naval Officer that I held and earned successfully for over 17 years. This is why it puzzled me on what this is all about and where did it come from. It is an honor and privilege for I to have been selected as an FBI employee and it is of great concern and hardship to find out why I was cut so abruptly after coming so far.

In closing, I have requested a Freedom of Information/Privacy Act (FOIPA) to assist and aid me to get the root of the matter that caused my unexpected conditional offer of appointment to be rescinded.

Sincerely,

Vincent Pitts







U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

*March 8, 2004*

MR VINCENT PINKNEY PITTS
1106 CENTURY OAK DRIVE
FREDERICKSBURG, VA 22401

Request No.: 0993045- 000
Subject:PITTS, VINCENT PINKNEY

Dear Mr. Pitts:

    ☒    This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

    ☐    For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

    ☐    To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

    ☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

    ☐    We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

    ☐    Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division



From:     will.vinson@comcast.net
To:       vppitts@earthlink.net
Subject:  FBI Contract Issues /Vincent Pitts/ my employment
Date:     Sep 30, 2003 4:43 PM
Attachments: HTML

From: Joe Carnevale
Sent: Tue 9/30/2003 1:19 PM
To: Will.Vinson@edocorp.com
Subject: Re: FBI Contract Issues /Vincent Pitts/ my employment

Will,
I cannot say for certain what motivated the management at FBI to insist that
Vincent not be allowed further access or employment on their task.  I was
disappointed Vincent was a good employee whom we would have retained if there
was another place to use him.  As far as your future goes, the task you are on
has a period of performance that goes to 31 Dec and we have sufficient funding
on the contract to get there.  We have heard that the FBI wants to transition to
another contract vehicle.  The awards of those vehicles are being made now.  We
will be working with those companies to continue our current support effort.  We
feel that your services are of value to the FBI and they will want us to
continue.  We will keep you appraised of our progress.  The important thing is
to keep up the great work you are doing.  Our customer's appreciation of that
work is key.
Joe

>>> Will Vinson <Will.Vinson@edocorp.com> 09/30/03 09:14AM >>>

Dear Sir,

I am writing to tell you that Vincent Pitts, an EDO/AERA employee who was
recently released from our contract with the FBI, was highly regarded as
productive, dedicated and competent by his customers and peers here.  Many have
offered to give him references and express sadness and shock that he is no
longer working here.

I have heard from people very close to the situation that Vince would still have
his job had he not insisted on writing a statement in his own defense, and just
let the issue go.  Some stated that Vince was talking to too many people
regarding the issue, but he never spoke to me - his closest confidant - or to
others closely involved (as I confirmed).

My sense is that Vincent's situation is unjustified.  The reassignment actions
that have been taken on the part of the government appear to be by folks who did
not work closely with Vince or know him well, and were not generated by his
customers or peers.  For the record, my opinion is that this situation has more
to do with this relationship with his supervisor and our pending end of contract.
I hope that you can find other assignments for him and retain him as an
outstanding employee.

I understand that today is the last day of our contract here unless some
extension has been arranged.

M



*(Rev. 08-28-2000)*

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                          **Date:** 12/15/2003

**To:** Security                    **Attn:** SSA[_____] Room 4445

**From:** Information Resources
          Network Section/Telecommunications Services, Room 6421
          **Contact:** [_____]

**Approved By:**

**Drafted By:**                                              **b6**

**Case ID #:** 67D-HQ-1446961 #1                             **b7C**
               67D-HQ-1444864 #3

**Title:** SCI WAIVER FOR VINCENT PINKNEY PITTS

**Synopsis:** Mr. Vincent P. Pitts applied for and has been highly
recommended for a position as an Information Technology
Specialist in the FBI Communications Center. In this position
Mr. Pitts will require access to Sensitive Compartmented
Information (SCI). Mr. Pitts' wife is not a United States
citizen. She is a resident alien. This electronic communication
(EC) provides justification for a waiver from the Director of
Central Intelligence Directive (DCID) requirement that immediate
family members of FBI employees who have access to SCI be US
citizens.

**Reference:** 66-HQ-A1240026-APPH Serial 884
               66F-HQ-C1384970 Serial 2792

**Details:** The FBI Communications Center is responsible for
processing official FBI organizational secret and top secret
messages and for managing and maintaining the Secure Automated
Message Network (SAMNet) that is used by the FBI to exchange
secret and top secret messages with other Governmental agencies
and other members of the Intelligence Community such as the
National Security Agency and the Central Intelligence Agency.
Currently the Communications Center processes approximately
100,000 messages per month.

    The current SAMNet system was developed and installed
back in the 1980s and is well past its designed life-cycle. The
system is very labor intensive and requires most messages to be
printed and manually distributed. A major project is currently
underway to replace the current SAMNet system with a new, state-



To: Security  From:  Information Resources
Re: 67D-HQ-1446961, 12/15/2003

of-the-art system that will support the electronic distribution
of the messages directly to the desk top and will be compatible
with the messaging systems used by the other members of the
Intelligence Community.

To implement and maintain the modernized version of
SAMNet, the Telecommunications Services Unit/Communications
Center will need an Information Technology Specialist (ITS)
experienced in applications software development.  To that end, a
a posting for an ITS (Applications Development) was initiated in
August, 2003.

Vincent Pitts was the top-rated applicant. He has
over 7 years of experience performing analysis, development,
implementation and integration of  web-based and client server
applications, coordinating same with project and program managers
with regard to technology business processes and plans.  Mr.
Pitts has planned the entire database schema and data structure
for client applications; generated technical guidelines and
standard operating procedures and maintained and upgraded each
application.

In addition, Mr. Pitts already has an outstanding
performance record with the FBI.  Over the last two years Mr.
Pitts worked as  a contractor for the Investigative Technology
Division (ITD) supporting the Tactical Operations Support Center.
He supported one covert and two covert locations.  He designed
and developed several data bases which contain secret and top
secret information.  He already has a top secret clearance and
comes highly recommended by the ITD Tactical Operations Section.
Mr. Pitts has a Master's degree in Communications Technology.

Mr. Pitts is a US citizen but his wife is a resident
alien from the Bahamas.  There is a Director of Central
Intelligence Directive (DCID) requirement that immediate family
members of FBI employees who have access to SCI be US citizens.
However, because Mr. Pitts has superior qualifications for the
position being offered the Telecommunications Services Unit,
Network Section, Information Resources Division, requests that a
waiver from this DCID be granted.

2



To: Security  From: Information Resources
Re: 67D-HQ-1446961, 12/15/2003

LEAD(s):

Set Lead 1:

SECURITY

AT WASHINGTON, DC

That the Personnel Security Section, Security Division,
grant a waiver for Mr. Vincent P. Pitts from the Director of
Central Intelligence Directive (DCID) requirement that immediate
family members of FBI employees who have access to SCI be US
citizens.

◆◆



cc: _____ Room 9904
    _____ Room 6247
    _____ Room 9480
    SSA _____ Room 4445
    _____ Room 6658

**b6**

**b7C**

3



FD-498 (Rev. 1-28-99)

# POLYGRAPH REPORT

| Date of Report | Date of Examination | Case ID # |
|---|---|---|
| 2/8/04 | 2/03/04 | 67D-HQ-1444864 |

Field Office/Agency Requesting Examination

FBIHQ

| Authorizing Official | Date Authorized |
|---|---|
| Director, FBI | 3/1/94 |

Examinee's Name (Last, First, Middle)

Pitts, Vincent, Pinkney

Case Title:

VINCENT PINKNEY PITTS
BUAP-SUPPORT
PRE-EMPLOYMENT POLYGRAPH EXAMINATION

b6

b7C

Case Synopsis/Examiner's Conclusion:

The examinee has applied for a position with the FBI and has agreed to undergo a Polygraph exam as a part of the process. The focus of this examination involved issues relating to foreign counterintelligence, use or sale of illegal drugs and the completeness of the application (Application for Employment).

The applicant advised that he has had a Top Secret Clearance relating to duty assignments in the United States Navy, 12/85-3/97.

The applicant was afforded a polygraph examination consisting of the following relevant questions:

Series IA
1.. Has any group or organization directed you to seek FBI employment?  Answer: No
2.  Have you ever provided classified or sensitive information to any unauthorized individual? Answer: No
3.  Have you ever had any unauthorized contact with anyone representing a non-U.S. Intelligence Service. Answer: No

Series II
1. Have you ever sold any illegal drugs? Answer: No
2. Have you violated the FBI guidelines concerning the use of illegal drugs? Answer: No
3. Have you deliberately withheld any important information from your application? Answer: No

It was the opinion of the examiner that the applicant was not deceptive when responding to the above listed relevant questions.

CONTINUE/DISCONTINUE

Examiner's Name   SA

INITIALS:  M    DATE: 2-13-04

CODE:       BAEU

FD-497 (Rev. 3-20-02)

# POLYGRAPH EXAMINATION WORKSHEET

| Date of Report<br>2/8/04 | Examination Date<br>2/3/04 | Examiner<br>SA |
|---|---|---|

| Case ID #<br>67D-HQ-1444864 | Location of Examination<br>Richmond |
|---|---|

Examination Requested By
FBIHQ

Examinee Name (Last, First, Middle)
Pitts, Vincent, Pinkney

| Date of Birth | Place of Birth |
|---|---|

| HT | WT | Sex | Age | SSN | Marital Status |
|---|---|---|---|---|---|

| Current Address  1106 Century Oak Drive<br>Fredericksburg, Virginia | Phone Number | | |
|---|---|---|---|
| | Retest  ☐ Yes  ☒ No | **b6** |

Previous Examination
No

**b7C**

Education (Total Years)         ) (Degrees Obtained)
4/98-3/03, Strayer University, M.S. Communications Technology

**b2**

Employment/Military
Unemployed since 10/03

**b7E**

Health/Medication
Good health reported. No medications/prescriptions. Normal nights sleep.

Arrests/Convictions
None reported

| Criminal ☐ | PSP ☐ | Date 2/3/04 | Time In 9:30AM | Time Out 12:05PM |
|---|---|---|---|---|
| FC/VTER ☐ | WITSEC ☐ | Date _____ | Time In _____ | Time Out _____ |
| Applicant ☒ | Outside Agency ☐ | | | |
| OPR ☐ | | Date _____ | Time In _____ | Time Out _____ |

|  | FBI MGQT | POT | Other | Total |
|---|---|---|---|---|
| Number of Series | | | | |
| Number of Charts | | | | |
| Instrument Type: | | | Serial Number | |

Examination Results

| Series I | Series II | Series III _____ | Series IV _____ | Series V _____ |
|---|---|---|---|---|

Additional Information Obtained?  ☐ Yes  ☒ No

| Pre-Test Admission ☐ | Pre-Test Confession ☐ |
|---|---|
| Post-Test Admission ☐ | Post-Test Confession ☐ |

Comments

02/12/2004 * * *  Bureau Personnel Management System (BPMS)  * * *    SUA105P4

- 13:23:43                    Display Polygraph Results


Status . . . . : ACTIVE

File Number. . : 067-1444864

Name . . . . . : PITTS VINCENT PINKNEY

SASAU Analyst. :                                     b6

PSI Conducted. : 01/14/2004                          b7C


Action : (C)ontinue (D)iscontinue (P)ending

Result : INC= Inconclusive DI= Deception Indicated NDI= No Deception Indicated

         R= See Report


| Test | Date Scheduled | Date Conducted | Date To Lab | Date Reviewed | Action | Result |
|------|----------------|----------------|-------------|---------------|--------|--------|
| 1    | 02/03/2004     | 02/03/2004     | 02/03/2004  | 02/11/2004    | C      | NDI    |


  F3= Exit  F12= Cancel

4A0                                                       02,001





DELORES PITTS DEPOSITION

1 (Pages 1 to 4)



**Page 1**

```
 1        IN THE UNITED STATES DISTRICT COURT
 2      FOR THE EASTERN DISTRICT OF VIRGINIA
 3              Alexandria Division
 4
 5   * * * * * * * * * * * * * * * * * *
 6   VINCENT PITTS,            :
 7            Plaintiff,  :
 8        v.        : Case No.:
 9   EDO PROFESSIONAL SERVICES, INC. : 1:05CV215
10   t/a AERA,                :
11            Defendant.   :
12   * * * * * * * * * * * * * * * * * *
13
14      Telephone Deposition of DELORES PITTS
15              Washington, D.C.
16          Wednesday, July 6, 2005
17                2:20 p.m.
18
19
20   Job No.: 1-57232
21   Pages: 1 - 37
22   Reported by:  Nancy Bond Rowland
```

**Page 2**

```
 1        Telephone Deposition of DELORES PITTS,
 2   held at the offices of:
 3
 4        Bonner, Kiernan, Trebach & Crociata
 5        1250 Eye Street, N.W.
 6        Suite 600
 7        Washington, D.C.
 8
 9        Pursuant to agreement, before Nancy Bond
10   Rowland, Registered Professional Reporter and Notary
11   Public in and for the District of Columbia.
12
13
14
15
16
17
18
19
20
21
22
```

**Page 3**

```
 1              A P P E A R A N C E S
 2   ON BEHALF OF PLAINTIFF:
 3        CHAD M. RINARD, ESQUIRE
 4        LAW OFFICES OF OWAIIAN M. JONES
 5        P.O. Box 8320
 6        Fredericksburg, VA  22404-8320
 7        (540) 373-3312
 8
 9   ON BEHALF OF DEFENDANT:
10        CHRISTOPHER E. HASSELL, ESQUIRE
11        CHRISTINE RAMAPURAM, ESQUIRE
12        BONNER, KIERNAN, TREBACH & CROCIATA
13        1250 Eye Street, N.W., Suite 600
14        Washington, D.C.  20005
15        (202) 712-7000
16
17        THOMAS M. LOPEZ, ESQUIRE
18        ESANU, KATSKY, KORINS & SIGER
19        605 Third Avenue
20        New York, NY 10158
21        (212) 953-6000
22
```

**Page 4**

```
 1                CONTENTS
 2   EXAMINATION OF DELORES PITTS         PAGE
 3     By Mr. Hassell                5
 4
 5
 6               EXHIBITS
 7             (None marked)
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
```

**5**

1  PROCEEDINGS
2  DELORES PITTS
3  having been duly sworn, testified as follows:
4  EXAMINATION BY COUNSEL FOR DEFENDANT
5  BY MR. HASSELL:
6  Q  Good afternoon, Mrs. Pitts. We're taking
7  this deposition by phone because I understand you're in
8  the Bahamas, is that right?
9  A  That's correct.
10  Q  Can you state your full name for me please?
11  A  Delores Pitts.
12  Q  Do you have a middle name?
13  A  Nadia.
14  Q  Are you married to Vincent Pitts?
15  A  Yes.
16  Q  How long have the two of you been married?
17  A  12 years.
18  Q  Are you a citizen of the United States?
19  A  No.
20  Q  Where were you born?
21  A  The Bahamas.
22  Q  How come you're in the Bahamas today and your

**6**

1  husband is here in Washington, D.C.?
2  A  My niece is getting married, and every year
3  my husband promised that I can go home.
4  Q  Do you still have some relatives there?
5  A  Yes.
6  Q  Can you tell me how old you are?
7  A  ▆
8  Q  And do you have a Social Security number?
9  A  Yes.
10  Q  Can you give me that please?
11  A  ▆▆▆▆▆.
12  Q  Are you currently employed?
13  A  ▆
14  Q  When's the last time you had a job?
15  A  ▆
16  Q  ▆▆
17  A  ▆
18  Q  What did you do?
19  A  I worked at Wal-Mart as a technician
20  specialist.
21  Q  And why did you stop working there?
22  A  We moved to Fredericksburg.

**7**

1  Q  Have you been looking for work since then or
2  not?
3  A  I have.
4  Q  You have or haven't?
5  A  I have.
6  Q  Okay. Why did you move to Fredericksburg?
7  A  Wanted to move closer to the job and just was
8  looking for something different.
9  Q  Did you live in Manassas Park before that?
10  A  Yes.
11  Q  How did you and the neighbors get along in
12  Manassas Park?
13  A  I'd see them, hailed them.
14  Q  You she them what?
15  A  When I see them, I hailed them, waved to
16  them.
17  Q  You said hello to them?
18  A  Yes.
19  Q  Sometimes there will be some silence while I
20  look for some pieces of paper. Okay?
21  A  Okay.
22  Q  Do you remember a neighbor named Nancy

**8**

1  Peatchic, P-e-a-t-c-h-i-c?
2  A  I don't remember her last name, but I do
3  recall somebody by that name. She's probably an
4  elderly lady, an elderly lady who lived across the
5  street I believe. I believe that's her.
6  Q  And I have an address for her of 9301 Joshua
7  Court. Do you remember that address?
8  A  No, but I believe it's — I just remember a
9  Nancy probably living across the street. I don't
10  remember what the address was.
11  Q  Okay. What was your address?
12  A  9304. I'm not sure. I don't have that
13  information in front of me.
14  Q  Did you get along with her okay?
15  A  I really didn't see her at all.
16  Q  All right.
17  A  I really didn't see her that much. When I
18  see her, I would wave.
19  Q  As part of this case your husband's attorneys
20  have given me some documents that include background
21  investigations from the FBI. Have you seen those?
22  A  Some of them, yes.

**9**

1    Q   Okay.  Have you seen the one from Nancy

2    Peatchic?

3    A   The same Nancy you've talking about?

4    Q   Yes.

5    A   Yeah.  I don't recall specifically, but I

6    just recall her telling some lies on me.

7    Q   Okay.  That's what I wanted to ask you about.

8    A   Okay.

9    Q   What lies did she tell about you?

10   A   Well, for one she didn't see me outside

11   knocking on any door or in any nightclothes.  She didn't

12   see me outside taking pictures of anybody if that's the

13   one who said it.  I just remember general stuff.  At

14   any time she didn't see me outside in any nightclothes

15   knocking on the door or crying outside.  Never.  Never

16   happened.

17   Q   She says that there was a time when your

18   husband locked you out of the house in your bathrobe

19   when you went out to take out the garbage, and wouldn't

20   let you back into the house, and you just sat on the

21   porch and cried.  Is that true?

22   A   Never.

**10**

1    Q   That never happened?

2    A   Never happened.

3    Q   Do you have any explanation for why she would

4    tell that untruth about you and your husband?

5    A   No.  I have no reason that she would.  But

6    when I brought it up to my mother-in-law, and I just

7    couldn't believe that somebody would actually say

8    something like that because at the time I didn't know

9    who would say something like that.  And then as I was

10   talking she said "That sounds like me."  And I said

11   "Well, I don't have a porch.  Why would you be crying?"

12   And then she said "No, no, no," and then she started

13   telling me the story.

14   And then she said "You remember when I came

15   to your job in the big dog slippers that you bought

16   me."  I don't know if I have to tell the story about

17   the big dog slippers.  And I said "Yeah," and she said

18   "Well, that's when I got locked outside."  And I was

19   like oh, I remember her having her housecoat on because

20   I had bought it, and I remember her having the slippers

21   on I had bought for Vincent.  It was like them stuffed

22   animal type slippers.  I remember her having that on

**11**

1    and coming to the job, but she didn't come inside.  Her

2    friend came inside to get the keys from me, and she was

3    like "That's when I got locked out.  I was locked out

4    twice that day."  But I never think of the story ever

5    since then because she didn't give me the details on

6    that date.

7    Q   And the person who told you this is your

8    mother-in-law?

9    A   Yes.

10   Q   Where does she live?

11   A   In Baltimore.  She came down to take care of

12   our son at the time I was working and Vincent was, and

13   I just recall the story that she was telling me about,

14   but she never explained to me that she was outside and

15   she was knocking on the door for him.  So it was just

16   she got locked out, and she was trying to bang on the

17   door for him to let her back in.  She was knocking on

18   the door, ringing the doorbell or something.  I don't

19   know.  I wasn't there.  So maybe that's what she might

20   have thought.

21   Q   Okay.  I understand that.  Let me just ask

22   you this.  Describe for me how it came about that you

**12**

1    were talking to your mother-in-law about what Miss

2    Peatchic said to the FBI.

3    A   Vincent was telling me, you know, he was

4    going through the files, and he just said he was

5    looking —

6    MR. RINARD:  Miss Pitts, I will just advise

7    you don't have to tell us what Mr. Pitts has told you.

8    MR. HASSELL:  Why not?

9    MR. RINARD:  Marital privilege in this case.

10   MR. HASSELL:  I don't think that works, but

11   let's not fight about it.

12   BY MR. HASSELL:

13   Q   Go ahead, Mrs. Pitts.  Just tell me how it

14   came about.

15   A   He was just going through the files reading

16   the files, and as he was going through the files, and I

17   was like what?  And I was like are you serious?  And

18   I'm going through it and looking at it, and I can't

19   believe that.  And I called her basically crying, and

20   it was for other reasons not even related, and I'm

21   telling her the story what this lady said and not just

22   her but what other people had said, other neighbors.

**13**

1 And she was like the door was locked at the house, and
2 it's me. That's how she came to say it, and then she
3 started explaining why she got locked out.
4    Q  Miss Peatchic also told the FBI that your
5 husband was verbally abusive to you.  Do you agree with
6 that?
7    A  Of course not.  Of course not.
8    Q  She says that he's constantly yelling.  Is
9 that true?
10    A  Of course not.  Yelling at who?
11    Q  Well, at least at you partly.
12    A  At me?  Why would he be yelling at me?
13    Q  I don't know.  I'm asking you does he yell at
14 you?
15    A  No.  No.  Never has.
16    Q  Okay.
17    A  And locked out, I just couldn't believe
18 somebody would even say something like that.  It just
19 behooves me, shocks me.
20    Q  Have you ever —
21    A  I have my own key, my own car.  Why in the
22 world would he be yelling at me or locking me out?

**14**

1    Q  Have you ever talked to Nancy about this?
2    A  No, but I wish I had.
3    Q  Do you remember Ann Clay?  She lives at 9300
4 Joshua Court.
5    A  No.  Never met her, but I saw her before, and
6 I come to know that name because of this case.
7    Q  She says that your husband became extremely
8 combative one time when one of your neighbors mowed his
9 lawn.  Do you remember that ever happening?
10    A  No.  Never happened.
11    Q  She also described another incident where her
12 cat would scratch your tree and your husband would, as
13 she said, flip out and become extremely agitated.  You
14 have any knowledge of that?
15    A  I have knowledge of the cat scratching the
16 tree.
17    Q  Okay.  Did your husband get mad about that?
18    A  Why would he get mad about a cat scratching a
19 tree?  He just went to her, and it wasn't scratched.
20 He broke the tree.  He broke the limb.
21    Q  The cat did?
22    A  Yes.  And the only reason is because this

**15**

1 other cat or stray cat, I'm not sure, or the neighbor's
2 cat, one of those that live right next door to us, his
3 cat would come and crap right in the front of our door
4 or by our tree, this same particular tree, constantly.
5 Let me think a second.  So that's the incident I
6 remember about the cat.
7    Q  Did you talk to Miss Clay about her cat?
8    A  No.  Never.
9    Q  Did your husband talk to her about the cat?
10    A  I watched her cat — Well, he called me
11 outside, and this large cat was still by the tree just
12 looking at us.  And he just went to her to see if that
13 was her cat because I told him that might be her cat
14 because I seen the cat over there, and he would walk
15 back over to that house.  And I told him that's her
16 cat.  So she wanted to make sure, and he just told her
17 what she did.  I couldn't hear him, but I saw when he
18 went over there, and this was early in the morning, and
19 then that was it.  He came back a short time, maybe
20 about a minute or two after she opened the door, might
21 not even have been a minute, and he came back over and
22 got in his car and leave.  And he said yeah, that was

**16**

1 her cat.
2    Q  When he went over and talked to her, was he
3 angry or agitated?
4    A  No.  He just wanted to know.
5    Q  So he just wanted to know if that was her
6 cat?
7    A  Right.
8    Q  Did he say anything to her about not having
9 the cat come and defecate on your property and scratch
10 your tree?
11    A  No.  He didn't tell me he said anything about
12 what he told her.  He just went over to her and asked
13 if that was her cat.  And she said yes, it was.  He
14 come back and tell me yeah, that was her cat.  That was
15 it.  He said she didn't — He just said she just said
16 that was her cat.  It wasn't a big deal to me.
17    Q  Miss Clay also says that she saw you hiding
18 in the garage and taking pictures of the neighbor
19 mowing the lawn and crossing over the side of your
20 yard.  Is that true?
21    MR. RINARD:  I'm going to put a universal
22 objection to relevance even in the expanded bounds of

**17**

1  discovery. I think we're beyond even getting
2  information that will lead to relevant facts. But
3  answer to the best of your ability, Miss Pitts.
4      MR. HASSELL: I'm pretty sure Mr. Butler is
5  trying to claim he didn't get this FBI job because of
6  something some AERA or EDO employee said, and is that
7  not the claim?
8      MR. RINARD: That's part of it.
9      MR. HASSELL: Okay. I'm trying to show that
10 he didn't get the job because of what other people
11 said. It seems pretty relevant to me, but in any
12 event.
13 BY MR. HASSELL:
14     Q  Go ahead, Miss Pitts. The question was is
15 what Miss Clay said true? Were you hiding in the
16 garage taking pictures of the neighbor mowing the lawn
17 and crossing over into your yard?
18     A  Absolutely not.
19     Q  She says the neighbors were afraid of your
20 husband. As far as you know is that true?
21     A  Absolutely not.
22     Q  She says that while you were living in the

**18**

1  neighborhood, the neighbors wouldn't come out of their
2  homes while your husband was in the yard. Is that
3  true?
4      A  How would I know what their feeling was or
5  what their thought was?
6      Q  I don't know. Maybe you spoke to some of
7  them. Maybe something you saw or heard would let you
8  know that.
9      A  No. For one, I hardly saw Miss Clay. As I
10 said, I never even spoke to her. So I didn't see her
11 come outside, so how would she know.
12     Q  Can you give me any explanation about why
13 Miss Clay would tell the FBI these untruths?
14     A  I wish I knew. I wish I knew. And I don't
15 think Miss Clay even could have said that.
16     Q  Okay. Did you ever have a run-in with her
17 about anything?
18     A  No.
19     Q  Miss Pitts, I have also I think attached to
20 the complaint something called a sworn statement dated
21 January 5, 2005 from you. Are you familiar with that
22 piece of paper?

**19**

1      A  If you tell me what it is.
2      Q  Okay. It says "My name is Delores Pitts, and
3  on September 30, 2003 I went with Vincent Pitts, my
4  husband, to EDO/AERA. I was listening to Kendra
5  Carroll talking to Vincent, and I heard her (Miss
6  Carroll) say to Vincent in my presence 'You had a
7  security violation on the book.' Vincent said 'What
8  book? I did not tell you about a book.' And then Miss
9  Carroll said 'Jim said you had a security violation on
10 the book.' Sincerely yours, Delores Pitts."
11     A  Okay.
12     Q  Did you sign that?
13     A  Yes.
14     Q  So you went to a meeting at the AERA office
15 on September 30 with your husband?
16     A  Yes.
17     Q  Why did you go with your husband to that
18 meeting?
19     A  He went through — Why did I go? I drove him
20 there. I went to be there because I wanted to know why
21 would somebody just — why would they want to destroy
22 his life. What for? What for?

**20**

1      Q  And do you remember meeting with Miss
2  Carroll?
3      A  Yes. I remember being in the room right
4  there every step of the way with him.
5      Q  Tell me everything you can remember about
6  that meeting with Miss Carroll.
7      A  I just remember an overall view of Miss
8  Carroll sitting saying that yeah, Vincent, you signed a
9  noncompete and Jim didn't. Yeah, they are trying to
10 work out the contract. And she was looking for this
11 job on the computer or something like that. She was
12 just, you know, talking about it. And then she was
13 like she asked Vincent if he had brought his resume
14 with him. And at one point Vincent said to her well,
15 you should have it. And then they were talking about,
16 she was talking about some job. She was just talking
17 about database or something like that, and he said I
18 have a master's degree in technology. I can do any job
19 as far as technology.
20        I can't remember exactly everything that they
21 had said. I just remember one thing that was important
22 that I needed to remember, and at one point she said

6 (Pages 21 to 24)

**Page 21**

1 that Vincent was saying that I was — I don't remember
2 if he said true to EDO/AERA and FBI, both sides of the
3 fence, and she kept on saying those kinds of words.
4 And he repeated it too many times. And she said well,
5 you had a security violation, and that's how it came
6 about.
7    Q. Okay. It's the very last part I didn't
8 really understand. What was Miss Carroll saying too
9 many times?
10    A. No.
11    Q. I mean Vincent was saying too many times.
12    A. That he was — My niece and stuff are coming
13 in the room, and that distracted me.
14    Q. Okay. You want to stop for a minute?
15    A. No, no, no. They're gone. I should lock the
16 door or something. I can't.
17       He just was repeating so many times about
18 that he was good on both sides of the fence. He would
19 uphold ethics on both sides of the fence, something
20 like that he was just saying.
21    Q. What does both sides of the fence mean?
22    A. I guess he means he was good to the FBI, and

**Page 22**

1 he was good to EDO/AERA, and I guess he must have said
2 that too many times. So that's when she said that like
3 well, you had a violation. That's when she repeated
4 that.
5    Q. And what did your husband say in response?
6    A. He looked at me, and I told him not to say
7 anything.
8    Q. Why did you tell him —
9    A. When she said a book, in my mind I was
10 thinking don't say anything.
11    Q. Why did you tell him not to say anything?
12    A. I told him not to say anything because I
13 figured if he talked about it, he told me that he had
14 signed a release from the FBI when he left, when they
15 escorted him out or when he left, and so that's why I
16 didn't want him to talk about it, and it didn't dawn on
17 us anymore after that.
18    Q. You remember anything else about this
19 meeting?
20    A. When we were leaving she had mentioned that
21 they were in a room trying to get the contract, get the
22 contract going again. And she mentioned that because

**Page 23**

1 Vincent was saying why can't I get the letter. And as
2 he was saying why can't I get a copy of the letter, as
3 he was asking her for a copy of the letter, and she was
4 saying something about some privilege. I don't
5 remember the name of it, but she was saying why he
6 couldn't get the letter. And then she would have to
7 ask the manager or something. I forgot the name of the
8 guy she had mentioned that was in charge. I call him
9 the two star.
10       And then I said well, go ask him. And she
11 said oh, he's in a meeting now. They're trying to get
12 the contract going again. And then she said that well,
13 you would need a subpoena or something. I didn't know
14 what that means, what a subpoena means, if that means
15 you have to go to court. I'm not sure. Well, now I
16 know what that means, but I didn't know what that means
17 at the time. That's what she said. I think that's how
18 it ended. I'm not sure.
19    Q. Did you see the letter?
20    A. Yes. And Vincent also read the letter, and
21 also Vanessa Brown I believe is her last name, she read
22 the letter as well.

**Page 24**

1    Q. Vanessa Brown read it when?
2    A. She read it prior when she met with Miss
3 Carroll.
4    Q. Did you go to that meeting on the 26th too?
5    A. Yes. I went, yes.
6    Q. All right. Tell me about the meeting on the
7 26th with Miss Brown. What happened then in that
8 meeting?
9    A. They were just having a conversation, Vincent
10 and Miss Brown, and they were reading the letter that
11 Mr. Butler had given to him I guess as far as his raise
12 and stuff like that, and they were talking about —
13 They were just having a conversation. They were going
14 through his files and stuff.
15       And she was like well, I don't see anything
16 in here, nothing negative. Vincent was saying there's
17 nothing negative in my personnel file, so I don't see
18 why they would just remove me for any reason at all,
19 for no reason at all. And they were just talking. And
20 she was like well, your boss didn't protect you was one
21 of her words, and she was like because she was the one
22 who said the subpoena first. That's how we know about

**25**

1  the subpoena, and then Miss Carroll mentioned it after.
2      Q  Did Miss Brown say anything about whether she
3  thought your husband had been treated fairly or not or
4  did she not comment on that?
5      A  She didn't comment on that.  She just said
6  that your boss didn't protect you.
7      Q  She didn't say anything about it being fishy
8  or anything?
9      A  Yes.  She said that this is — I believe she
10  said fishy or this smells, stinks.
11      Q  Okay.  I'm sorry.
12      A  I mean, Vincent said well, you see this and
13  if you have to go there, if I have to take this to
14  whatever, and she said I'll be there.  She said I'll
15  say what I saw.
16      Q  Did you see the letter that Mr. Butler had
17  sent over on that meeting of the 26th?
18      A  What letter that he sent over on the 26th?
19      Q  I'm sorry.  I'm not making myself clear.
20      A  Okay.
21      Q  We talked about a letter that you saw on the
22  meeting of September 30th about removing your husband

**26**

1  : from the contract.  Remember that?
2      A  Yes.
3      Q  Did you see that also on the 26th?
4      A  Yes.  On the 26th, yes.
5      Q  What did the letter say?
6      A  All I remember the letter was saying that his
7  skill sets weren't compatible with the job task, and
8  then it mentioned something about he's a good worker or
9  something like that.  It was talking that, you know,
10  he's a good employee or his skills were good or
11  something like that.  It was talking about at the
12  bottom, that's when it says his skill sets in the
13  bottom, it says something about his skill sets and
14  interpersonal problems.
15      Q  It said something about an interpersonal
16  problem?
17      A  Yes.
18      Q  Who did that come from?  Who did the letter
19  come from?
20      A  It just said it was — It had Butler on it,
21  and it had Tubbs on it, but they just said it came from
22  the FBI, and it had Amy, a big A on it, I guess her

**27**

1  initial.
2      Q  Did it say that it was from her?
3      A  It had both of their names on it.
4      Q  But did it say to Jim Butler from Amy Tubbs
5  or did it say something else?
6      A  I don't recall exactly all of that.  I just
7  remember I just was trying to remember certain
8  characteristics about it because they wouldn't give it
9  to him.
10      Q  Did it say anything about removing your
11  husband from the FBI contact?
12      A  No, not that I remember.  Just saying the
13  skill sets.  Only thing I remember about removing was
14  the letter after we got home, the termination letter,
15  something about he was removed from the contract or
16  something like that.
17      Q  Attached to the complaint in your husband's
18  case is a memorandum from Jim Butler to Amy Tubbs dated
19  9/24/2005.  Have you seen that?
20      A  A memorandum?
21      Q  Yes.
22      A  Was this the one with the big A on it that I

**28**

1  was just describing?
2      Q  I don't know.  That's what I wanted to ask
3  you.  Your husband tells me that the document I have in
4  front of me that's attached to his complaint is not the
5  same as the letter that he saw in that file.
6      A  Well, the letter I saw today — when I say
7  today, I'm talking about two years later — that's not
8  the same letter that I saw on that day.
9      Q  Okay.  That's what I wanted to ask you.
10  Well, you've seen another document that isn't the same
11  as what you saw on the 30th and the 26th, right?
12      A  Right.  Right.  I didn't pay too much
13  attention to that last letter because I just knew it
14  wasn't so.  I can't describe it right now.  Right now
15  the only thing I can remember about this one was it
16  didn't say management removes you.  It didn't say that
17  on that day when I saw the letter when he read it out
18  loud, when Miss Carroll told him didn't you already see
19  the letter, you don't have to read it, and he said I
20  want to read it to my wife.  That letter, that letter
21  is the one I saw that day.
22      Q  And what was different about that letter than

8 (Pages 29 to 32)

**29**

1  the one we have today?

2  A  Management removes you. That's this letter

3  today. Management had a meeting or something like

4  that. That was different. Also what was different to

5  me was she didn't have the big A anymore. This

6  memorandum doesn't have the big A anymore. And I

7  believe that it's not separated the way it was. The

8  first letter had two paragraphs, and I believe this one

9  didn't. I believe. I'm not sure about the paragraphs,

10  but I know it didn't say management had a meeting. It

11  didn't say that. That was the first thing that jumped

12  out at me.

13  MR. HASSELL: Mrs. Pitts, we're going to stop

14  asking you questions for a few minutes while I talk to

15  Mr. Rinard about something.

16  THE WITNESS: Okay.

17  MR. HASSELL: You can stay on the phone or we

18  can call you back. What do you want to do?

19  THE WITNESS: How long is it going to be?

20  MR. HASSELL: I'm not sure. Why don't you

21  hang on the phone for a minute and we'll see.

22  THE WITNESS: Okay because I'm getting my

**30**

1  hair done.

2  MR. HASSELL: That's much more important than

3  this. What time you getting your hair done?

4  THE WITNESS: Well, anything is better for my

5  husband's life and my life back. Oh, yeah.

6  MR. HASSELL: Give me a second. Okay?

7  THE WITNESS: Okay.

8  (Discussion off the record)

9  BY MR. HASSELL:

10  Q  Mrs. Pitts, do you remember talking to Kendra

11  Carroll about an opportunity for your husband to go

12  back and work on the FBI contract?

13  A  No. I remember her calling me and telling me

14  that — Well, she had called to speak to Vincent, and

15  he wasn't there, and she said that the two major people

16  of the contract was gone, so the contract had ended. I

17  remember that conversation with her. That was pretty

18  much what I remember from the conversation.

19  Q  I'm not sure if it's the same thing. Do you

20  remember her leaving a message for your husband,

21  leaving a voice mail, saying that the FBI might want

22  him to come back?

**31**

1  A  Yes.

2  Q  And you called her back and said something

3  about Vincent being under legal counsel. You remember

4  that?

5  A  I don't remember if I called her back and

6  said that, but I just remember — Oh, she called and

7  said — Wait a minute. No, I don't recall that.

8  Q  Do you remember talking to Kendra Carroll at

9  all about your husband maybe going back to work on the

10  FBI contract?

11  A  No. I remember a conversation with her

12  talking about I believe a guy named Dimitris or

13  something, and I don't remember if I talked to her or I

14  just heard that on the voice mail because she did call

15  different times.

16  Q  Did you think your husband ought to try to go

17  back to work on the FBI contract?

18  A  Not without them removing the letter because

19  that's exactly what he told her when she had asked him

20  the question. He said not without removing the letter

21  because you didn't do anything, didn't deserve it, and

22  I don't think he should go back for something that he

**32**

1  didn't do.

2  Q  The date your husband was removed from the

3  FBI contract was September 25, 2003. Okay?

4  A  Okay.

5  Q  Before September of 2003, did your husband

6  ever complain to you about Jim Butler?

7  MR. RINARD: Again, Miss Pitts, I will

8  instruct you you do not have to answer on

9  communications made between just you and your husband,

10  but you can answer only if you wish.

11  A  I don't wish to answer it.

12  Q  Before September of 2003, did your husband

13  ever tell you that he thought he was being

14  discriminated against at work?

15  MR. RINARD: Again, Miss Pitts, I give you

16  the same instruction. You do not have to say anything

17  that was said solely between you and Mr. Pitts.

18  A  I don't wish to answer it.

19  Q  Did you ever talk to your husband about going

20  to work for Jim Butler?

21  MR. RINARD: Again, Miss Pitts, I give you

22  the same instruction.

**SWORN STATEMENT**

Jan 04, 2005

My name is Delores Pitts, on September 30ᵗʰ, 2003. I went with Vincent Pitts my husband to EDO/ Aera. I was listening to Ms. Kendra Carroll talking to Vincent and I heard her (Ms. Carroll) say to Vincent in my present, "you had a security violation on a book" "Vincent said what book! I did not tell you about a book" then Ms. Carroll said "Jim said you had a security violation on a book".

Sincerely yours,

Delores Pitts

9 (Pages 33 to 36)

**33**

1   A  I wish not to answer it.
2   Q  If I ask you any more questions about your
3   communications with your husband, is that what you're
4   going to say each time, that you don't want to answer
5   it?
6   A  Yes.
7   Q  I'm sorry?
8   A  Yes.  That's correct.
9   MR. HASSELL:  Thank you, Mrs. Pitts.  When
10  are you coming back?  This can be off the record.
11  (Discussion off the record)
12  (Signature having not been waived, the
13  deposition of Delores Pitts was concluded at 3:00 p.m.)
14
15
16
17
18
19
20
21
22

**34**

1   ACKNOWLEDGMENT OF DEPONENT
2   I, Delores Pitts, do hereby acknowledge that
3   I have read and examined the foregoing testimony, and
4   the same is a true, correct and complete transcription
5   of the testimony given by me and any corrections appear
6   on the attached Errata Sheet signed by me.
7
8   _____    _____
9   (DATE)           (SIGNATURE)
10
11
12
13
14
15
16
17
18
19
20
21
22

**35**

1   CERTIFICATE OF SHORTHAND REPORTER – NOTARY PUBLIC
2   I, Nancy Bond Rowland, Registered
3   Professional Reporter, the officer before whom the
4   foregoing proceedings were taken, do hereby certify
5   that the foregoing transcript is a true and correct
6   record of the proceedings; that said proceedings were
7   taken by me stenographically and thereafter reduced to
8   typewriting under my supervision; and that I am neither
9   counsel for, related to, nor employed by any of the
10  parties to this case and have no interest, financial or
11  otherwise, in its outcome.
12  IN WITNESS WHEREOF, I have hereunto set my
13  hand and affixed my notarial seal this 7th day of July
14  2005.
15
16  My commission expires:
17  October 31, 2009
18
19
20  _____
21  NOTARY PUBLIC IN AND FOR THE
22  DISTRICT OF COLUMBIA

**36**

1   E R R A T A  S H E E T
2   IN RE:  Vincent Pitts v. EDO Professional Services
3   RETURN BY: _____
4   PAGE  LINE  CORRECTION AND REASON
5   ___  ___  _____
6   ___  ___  _____
7   ___  ___  _____
8   ___  ___  _____
9   ___  ___  _____
10  ___  ___  _____
11  ___  ___  _____
12  ___  ___  _____
13  ___  ___  _____
14  ___  ___  _____
15  ___  ___  _____
16  ___  ___  _____
17  ___  ___  _____
18  ___  ___  _____
19  ___  ___  _____
20  ___  ___  _____
21  _____
22  (DATE)        (SIGNATURE)





# UNITED STATES OF AMERICA
## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### WASHINGTON FIELD OFFICE

| | | |
|---|---|---|
| **VINCENT PITTS.** | ] | |
| **1106 Century Oak Drive** | ] | |
| **Fredericksburg, Virginia 22401** | ] | |
| | ] | **EEOC Case No: 100-2005-00622X** |
| **Complainant,** | ] | **Agency Case No.  F-04-5893** |
| | ] | |
| **v.** | ] | **Richard Furcolo** |
| | ] | **Administrative Judge** |
| **ALBERTO GONZALES** | ] | |
| **ATTORNEY GENERAL** | ] | **August 22, 2005** |
| **UNITED STATES DEPARTMENT** | ] | |
| **OF JUSTICE,** | ] | |
| | ] | |
| **Agency.** | ] | |

## DECLARATION OF VINCENT P. PITTS

I, VINCENT P. PITTS, declare as follows:

1.      I am a hired defense government contractor and I am also a Naval Reservist with the United States Navy and I live and reside in Fredericksburg, Virginia with my spouse, Delores Pitts and son, Devin Pitts.

2.      Your Honor, Thank you for taking the time to listen to me and hear my story.  For almost two years, I have been fighting to clear my name of the false information that discriminated me and understand why did this all happen? I filled a complaint because I know my background and I know my life and what happen to me was based on race and stereotype because everybody expected me to say discrimination because of how I was

1

un-expectedly moved from my FBI government contract, fired from my company and marked as "not suitable" for employment with the FBI and yet the results are exactly what appeared to have happened. Overall, I was reprisal.

3.     The picture that's being painted is not I and it is not my life. I believe in caring and supporting and I believe in those that can't fight back. More so, I believe in our Constitution and that all men and women are created equal.

4.     Sir, I am not one to stain our Country's name and dishonor those that serve to protect this Country against all enemies foreign and domestic. We need our men and women to stand tall and our families to remain behind them. I am a son, uncle, friend, nephew, cousin, co-worker, husband, mentor, father, Navy Sailor, and an American. The loyalty I have for my Country is strong and I believe in my heart that each person should have a right to freedom of speech and a right to defend his/her self if they are unfairly treated by anyone (no matter what race he/she is) that he/she believes violated their rights and liberties and prevent them from continuing on with their lives (to include family, professional, and personal values) and be able to apply to any job or position within the government, state or commercial and given a fair and honest assessment of their background and achievements.

5.     My case is unjustified and the false information that was gathered up against me was based on me enforcing my ethical values of not taking part in something that was unethical to me and then lied upon and the result of that decision created a domino effect on my life and background and placed me in a very uncompromising position today.

6.     I have never abused my wife (the woman I married and love) or my neighbors, never caused a disruption at a job site, never created/implied security violations/incidents, or miss-represented myself with clients, companies, customers, or co-workers. I am honest in my dealings with others including my family, co-workers, friends and myself. I lived by my values and means and I will be the first to take responsibility of my actions and admit my faults.

7.     I have provided everything (all evidence in my possession at the time) to all parties in support of my case and never in my life filed a discrimination complaint before even though there were times that I should. All I wanted to do was move on and live a life as other Americans and now I am stained for no reason at all because I stood my ground and fought back to defend myself, my honor, and my family - in that I felt was my right.

8.     Your Honor, to support my claim to continue with the hearing, I have reviewed the Department of Justice, Federal Bureau of Investigation (FBI or Agency) Motion for

2

Decision without a hearing and provide in my defense on why I deserve the right to continue on with the hearing and to be heard in court:

(1) Neighbor Comments in Dispute.

    a.  Statements provided by all neighbors in Manassas Park who recommended me for the FBI position (These neighbor contradict the statements provided by the two neighbors my wife and I had no direct relationship with and the negative events never happen)

    b.  Statements provided by family and friends that lived and visit us in Manassas Park

    c.  Statements provided by family and friends that know my spouse and I relationship and prove there has never been any reported or known domestic violence between my wife and I ever

    d.  Statement provided by neighbors at my current residence (Fredericksburg, VA) who recommended me for the FBI and DSS clearance including government family members

(2) Employers.

    a.  Statements provided by all employees who recommended for the FBI and DSS clearance, including the Navy

    b.  Communications I had with employees prior to (and after) the FBI dismissal that contradict statements submitted in behalf of the FBI motion.

    c.  Supported the entire TOSC unit and direct the support for several FBI contractors and employees on applications

(3) Incident at the FBI Site while was a FBI contractor (Jan 02 – Sep 03).

All information (evidence) as possible to counter all negative information as provided by statements submitted to the FBI I never was a disturbance, emotional, nor sad did I commit or cause any security violations or incidents.

(4) Admit 18 and 19 Amendment. Already corrected by Mr. Owalian Jones on August 1, 2005 and faxed to the FBI. Error was caught by me on July 29, 2005 and I answered the question correctly on phone with my lawyer on July 21, 2005 PM (and prior, dropped off answers to the law firm on July 21, 2005 AM) based on the original Agency Admits that was given to me by my lawyer a month ago (June 05).

(5) My deposition with EDO/Aera should not have been submitted in this motion.

(6) All documents (including the Navy) that talks about my life, character, integrity, family values, loyalty and my respect and honor to my myself, my family, my service, my country and the American people.

(7) I also waive my right to privacy and allow the FBI and DSS to release my background investigation files to the courts if further assessment is warranted. Based on the review of my FBI background and criminal (arrests, drugs, etc) checks that were done that came back negative and passing the poly, drug, and the personal

3

interview; I know my entire background was completed. I saw nothing else; left to do that was confirmed by FBI personnel I was in direct communication with during the entire background process and a direct review of my FBI background files (including DSS file)

9.    Your Honor, no one ever ask me for my side of the story and never bother to ask why – pretty much they never ask me anything.  I am not a criminal and I have no history of violence or emotional issues, and I broke no laws and abide by the laws of this country and stay true to my Naval core values of Honor, Courage, and Commitment, which have been my personal values, all my life.  However, I violated no one rights or liberties to find out what happen to me and did all I can to bring my side of the story to life through my own dedication and determination.  My family and I are fighting for our honor!

10.    Your Honor, I thank you so much for taking the time to listen and hope and pray that my voice was heard and the Hearing will go forward.

11.    Pursuant 21 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 27 day of August, 2005

Very Respectfully

Vincent Pinkney Pitts

1106 Century Oak Drive

Fredericksburg, VA 22401

4







## FAX TRANSMITTAL

**TO:**  Vincent Pitts

**COMPANY:**

**FAX NUMBER:**  540-371-2193

**FROM: Michelle A. D. Rodriguez**

**TITAN**
CORPORATION
OPERATIONAL ANALYSIS & TRAINING GROUP
11955 Freedom Drive
Suite 2000
Reston, VA 20190
Phone - 703-434-4028; Fax - 703-434-4040
Web Site: www.titan.com

**NUMBER OF PAGES INCLUDING COVER:**  4

**DATE:**  5/21/2004          **TIME:**  11:50am

**COMMENTS:**  Attached is my rebuttal statement to comments that an

FBI Investigator stated I said.  Please contact me if you have

any questions or concerns.  703-434-4028

Cordially,

Michelle A. D. Rodriguez

67D-HQ-1444864
AR/ar

On 01/12/2004, MICHELLE DENTON, Human Resources Asst, telephone number, 703-383-4658 , advised that she has known the applicant since 1999. She had contact with the applicant on a daily basis. This contact has been social/professional. This interview covered a 2-year scope.

DENTON advised she first met the employee when he came to work for TITAN, she stated the employee's record did not reflect any derogatory information, nor did it contain any EEO complaints or disciplinary action and the applicant was eligible for rehire. She further stated the employee always received outstanding evaluation, but did not appear to be satisfied with his ratings.

The applicant is of good character, associates, reputation, and ability. The applicant is financially responsible and there have not been signs of credit difficulties or unexplained affluence or problems. The applicant is and always has been loyal to the United States, and has not shown bias or prejudice toward any individual or group. During the scope of this background investigation, there were no indications that the applicant is, or had ever, abused alcohol or prescription drugs, or used, purchased, manufactured, trafficked, produced, transferred, shipped, received or sold any illegal drugs.

There has been no indication of any activity or conduct in the applicant's background which could be used in any way to subject the applicant to coercion or compromise and/or would impact negatively on the applicant's character, reputation, judgement, discretion, trustworthiness, responsibility, or loyalty to the United States or which would, should or could have a bearing on the applicant's suitability for federal employment or access to classified information.

DENTON recommended the applicant for an IT-Specialist position with the Federal Bureau of Investigation.

To whom it may concern,

I, Michelle Allison Denton Rodriguez would like to rebut on comments that were written by an FBI Investigator that I did not say.

1) I did not work with or personally know Mr. Vincent Pitts while he was working for Research Planning Inc. (RPI). Mr. Pitts was an employee from 4/28/1997 to 10/1/1999. I did not start working with RPI until 7/27/2001.

2) Comment: "She further stated the employee always received outstanding evaluations, but he did not appear to be satisfied with his ratings". I did not work with him to be able to make that statement.

3) I have never and do not recommend any employment positions with any other company for a terminated employee of my company to an investigator. I do not work close enough with these employees to give an opinion.

I did however state that after glancing at his file, I did not see any derogatory information, disciplinary action, or any EEO complaints about him and that he was eligible for rehire with the company.

Please contact me at 703-434-4028 if you have any questions or concerns.

Cordially,

Michelle A. D. Rodriguez

67D-HQ-1444864
AR/ar

On 01/12/2004, a review was conducted re the applicant's personnel file at TITAN which disclosed the following: he was hired in on 04/1997 as multimedia specialist, his beginning salary was $55k per year. He was promoted in 08/1999 to manager of software development. The applicant received the highest rating of Outstanding on a yearly basis, however the evaluation was broken into different categories with its own numeral rating, the overall evaluation was listed as outstanding. The applicant offered an 8 page rebuttal in 1999 to his outstanding rating which he felt was unfair because of the numeric rating in various categories. Regardless, the rating was at the highest level which was outstanding. The matter was investigated by the company, however there were no changes made after their review.

**Research Planning, Inc.** (TITAN)

MEMORANDUM

TO:     Bob Nealson, Vice President, ITD

FROM:   Greg M. Williams
        Director, Human Resources

DATE:   September 2, 1999

SUBJECT:   VINCE PITTS' PERFORMANCE EVALUATION

I have reviewed Vince's performance evaluation and rebuttal dated August 30, 1999.
Although the overall rating is "Exceeds Standards" your assessment of Vince's
communication and human relations/interpersonal skills reflects the unresolved
breakdown in communications between you and Vince that we (you, Vince, & I) have
attempted to resolve on at least two previous occasions.

I am requesting that you immediately schedule a meeting with Vince to discuss the
following recommended courses of corrective action:

1.  With Vince's input prepare a detailed job descriptions for my review and approval.

2.  Prepare and provide Vince with the current goals and objectives of the Division.

3.  Vince's email of 7/7/99 validates your comments in the Human
    Relations/Interpersonal skills.  Thus you should provide Vince with clear guidance on
    solving departmental issues that do not include "cc" to peers and blind copies to staff
    members.

4.  The evaluation does not indicate any essential tasks for the upcoming year.  You and
    Vince collectively should identify the specific tasks for the next evaluation period.

5.  Plan to conduct regularly scheduled staff meetings to discuss departmental issues.

Please contact me immediately if further guidance is needed.

cc: V. Pitts



*An Employee-Owned Company*

# FAX

| | |
|---|---|
| **Date:** | May 26, 2004 |
| **Number of pages including cover sheet:** | |

**To**

Vincent Pitts

Phone:
Fax:     Fax 1540-371-2193

**From:**

Maura E. Rush

Phone:     (703) 676-4286
Fax:       (703) 676-4174

--- **REMARKS:**   ☐ Urgent   ☐ For your review   ☐ Reply ASAP   ☐ Please comment

Vincent

As requested, I am providing the clarification.

Maura



May 26, 2004

To Whom It May Concern:

Vincent Pitts has requested clarification of information that was provided in the course of a security investigation. In response to this request, I am attaching a copy of clarification that was provided by the SAIC manager.

*Maura E. Rush*

Maura E. Rush
SAIC
Federal Communications BU
Sr. HR Manager
703-676-4206



To whom it concerns:

Regarding written statements from the FBI clearance interview on behalf of Vincent Pitts, the following clarifications:

The interpretation stated in the third paragraph has a negative connotation that was not intended. The word "paranoid" was my attempt to describe the motivation behind the traits of "Purpose Driven" and "Very Intense" – both admirable qualities in my opinion. Further, the interpretation that Vincent was in fear of his co-workers trying to get ahead of him is out of context. I believe Vincent left our company because he did not see a hierarchical career path, not because of someone trying to get "ahead of him". I also do not recall having conversations trying to convince Vincent that he was "wrong" and under "constant fear" as the paragraph implies.

I hope this helps clarify and re-iterate my recommendation of Vincent for the position of IT-Specialist.

Regards,


Michael Hopkins

Science Applications International Corporation
8301 Greensboro Drive, MS E-3-6 / McLean, VA 22102 / www.saic.com

To whom it concerns:

Regarding the written statements from the FBI clearance interview on behalf of Vincent Pitts, the following clarifications:

Item 1 – The written copy stated a 3-year scope, if this was intended to be the time of employment; Vincent worked with me for less than a year.

Item 2 – The word "paranoid" in paragraph 3 is my attempt to describe the motivation behind the positive traits of "Purpose Driven" and "Very Intense".   It is not intended to be a negative connotation.

Item 3 – There were 3 in our group (myself included).  The written copy has 5 in parenthesis in paragraph 3.  To clarify this paragraph, it is my belief that Vincent left the company because he did not see a hierarchical career path for him in the short term.

As the final sentence states, Vincent has my recommendation for the position of IT-Specialist.

Regards,

Michael Hopkins

67D-1444854
AR/sr

On 01/12/21004, MIKE HOPKINS, 7990 Gallows Rd, Vienna, VA, telephone number 703-676-0667, advised that he has known the applicant since 2001. He had contact with the applicant on a daily basis. This contact has been professional. This interview covered a 3-year scope.

HOPKINS advised he when they worked together on numerous projects with SAIC. He stated he was the lead engineer in a project where the applicant was involved with a group of engineers and he credited the applicant as being the leader of the group with the most expertise.

HOPKINS stated although the applicant had tremendous talent, he described him as being very intense and program driven, to the extent that he overpowered. The applicant was always concerned anytime member of the group would become tired and get grounded ahead of time. He assured the applicant that they worked he would give a direct honest [?] makes sure was trying to "get ahead" of him. He credited members the applicant he was trying to co-and, he was under constant fear of his co-workers crediting ahead of him.

The applicant is of good character, exercising reputation, and ability. The applicant is financially responsible he has known and he no signs of mental, alcoholism or emotional instance or problem. The applicant did not change his/her loyal to the United States, neither was shown blow or had the applicant identified or group. During the course of his background investigation, there was no knowledge that the applicant had, either use, or did or trafficked or prescribed or sold any illegal drugs, or used, purchased, manufactured, trafficked, produced, transferred, shipped, provided or sold any illegal drugs.

Therefore knows no indication of any activity or conduct in the applicant's background which could be used in any way to subject the applicant to coercion or compromise, or which would impact negatively on the applicant's character, reputation, judgement, discretion, honest-ness, responsibility, or loyalty to the United States or which would, should or could indicate a bearing on the applicant's suitability for federal employment or access to classified information.

HOPKINS recommended the applicant for an IT-Specialist with the Federal Bureau of Investigation.

67D-1444864
AR/ar

SAIC
11425 Issac Newton Dr.
Reston, VA 20198
10/1999-2000

On 01/09/2004, BENJAMIN CHESWELL, Supervisor, SAIC, telephone number, 703-882-0157, advised that he has known the applicant since 2000. He had contact with the applicant on a daily basis. This contact has been professional. This interview covered a 4-year scope.

CHESWELL advised he first met the applicant when he was his supervisor in the project development department. He stated that the applicant was an outstanding soft developer for the company, he developed several programs which were cost effective for SAIC. CHESWELL described the applicant as being very conscientious and goal oriented.

CHESWELL advised during the time the applicant worked for him there were no complaints filed nor were there any EEO complaints or disciplinary information.

CHESWELL advised because the applicant was a contract employee the only other person still at SAIC that would remember him would be MIKE HOPKINS.

The applicant is of good character, associates, reputation, and ability. The applicant is financially responsible and there have not been signs of credit difficulties or unexplained affluence or problems. The applicant is and always has been loyal to the United States, and has not shown bias or prejudice toward any individual or group. During the scope of this background investigation, there were no indications that the applicant is, or had ever, abused alcohol or prescription drugs, or used, purchased, manufactured, trafficked, produced, transfered, shipped, received or sold any illegal drugs.

There has been no indication of any activity or conduct in the applicant's background which could be used in any way to subject the applicant to coercion or compromise and/or would impact negatively on the applicant's character, reputation, judgement, discretion, trustworthiness, responsibility, or loyalty to the United States or which would, should or could have a bearing on the applicant's suitability for federal employment or access to classified information.

CHESWELL recommended the applicant for an IT-Specialist position with the Federal Bureau of Investigation.

August 12, 2003

Commanding Officer
Navy Personnel Command (PERS-921)

    REF:  Letter of Recommendation for Vincent Pinkney Pitts

Dear Sir:

    I have found Mr. Pitts' work in the Information Technology arena without parallel. Mr. Pitts has exhibited in-depth knowledge of computer systems, structure, and security; all that enables the system to function optimally.  I believe Mr. Pitts' greatest benefit is his ability to listen and grasp what the client wants then run with it.

    Mr. Pitts has established himself as an efficient and effective employee in our organization.  In a relatively short period of time he has produced products that support our operational process by coordinating voluminous data into clear, concise reports.  These reports are used by upper management for decision making purposes.

Sincerely,

Courtney Ann Swift
Management and Program Analyst
Federal Bureau of Investigation



T( 33)
R

## FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                     **Date:** 12/18/2003

**To:** Administrative Services     **Attn:** [ ]     Room 6658

**From:** Investigative Technology
Tactical Operations Section/Tactical Operations
Support Center
**Contact:** [ ]                                    **b6**

**Approved By:** [ ]                                    **b7C**

**Drafted By:** [ ]

**Case ID #:** 67D-HQ-1444864 -7
269-HQ-1217615  SUB F

**Title:** VINCENT PINKNEY PITTS
BUAP - IT SPECIALIST;
TACTICAL OPERATIONS SUPPORT CENTER ADMINISTRATIVE
PERSONNEL

**Synopsis:** Regarding request for Bureau acquaintance comments.

**Details:** Captioned Bureau applicant, Vincent P. Pitts worked in
the Tactical Operations Support Center for several years.  I
became knowledgeable of Mr. Pitts and his abilities when he was
assigned to assist me in the development and application of a Web
Based Strategic Initiatives Database.  I found Mr. Pitts very
enthusiastic, knowledgeable and eager to perform his duties.

I interacted with Mr. Pitts on a daily basis.  I would
say he appears to be of strong. honest character and reputation.
I can not comment on associates outside the office as I did
not/do not know any of his personal friends.  He appeared to be
extremely loyal to the Navy where he is a Naval Reserve officer.

Mr. Pitts is suitable for Bureau employment and I would
highly recommend him.




To: Administrative Services  From:  Investigative Technology
Re: 67D-HQ-1444864, 12/18/2003

**LEAD(s):**

**Set Lead 1:  (Info)**

    ADMINISTRATIVE SERVICES

       AT WASHINGTON, DC

       Ms. Swift recommends applicant Vincent Pinkney Pitts
for Bureau employment.

CC: 1 —
     1 —

**b6**

**b7C**

2

W-01-31-2003)

## FEDERAL BUREAU OF INVESTIGATION

**Precedence:** DEADLINE 12/30/2003          **Date:** 12/18/2003

**To:** Administrative Services      **Attn:** Katrina Morris, Room 6658

**From:** Investigative Technology
Tactical Operations Section/Tactical Operations
Support Center
**Contact:** Daniel P. Vance, 703-339-2772

**Approved By:** Thomas Marcus C
Bernacki Michael
Grever Louis E

**Drafted By:** Vance Daniel P.

**Case ID #:** 67D-HQ-1444864
269-HQ-1217615  SUB F

**Title:** VINCENT PINKNEY PITTS
BUAP - IT SPECIALIST;
TACTICAL OPERATIONS SUPPORT CENTER ADMINISTRATIVE
PERSONNEL

**Synopsis:** Provide acquaintance comments regarding above titled
applicant.

**Administrative:** Reference is made to Electronic Communication
(EC) from Administrative Services to Investigative Technology
titled "VINCENT PINKNEY PITTS, BUAP - IT SPECIALIST" dated
12/09/2003.

**Details:** The referenced EC requests Electronics Engineer (EE)
Daniel P. Vance to provide acquaintance comments regarding Bureau
applicant Vincent Pinkney Pitts. The extent of EE Vance's
acquaintance with Mr. Pitts is strictly professional and is
derived from a recent Bureau contract where the Tactical
Operations Support Center (TOSC) obtained Information Technology
(IT) services to support the TOSC wide-area network and
associated development of specialized applications and databases.
Mr. Pitts was a key contract employee who provided TOSC programs
with IT application development and systems integration during
the last year of the contract. EE Vance recommends the applicant
for Bureau employment as demonstrated in the following comments:

Character - Mr. Pitts was always honest, professional,
and conscientious in the performance of his duties for the TOSC.
EE Vance believes Mr. Pitts to have character traits that are
fully consistent with Bureau and security requirements.

To: Administrative Services    From:    Investigative Technology
Re: 67D-HQ-1444864, 12/18/2003

**Associates** – Having been a United States Naval Officer and currently in the Navy Reserve and as a recent contractor with the FBI, Mr. Pitts has demonstrated associations with highly reputable persons. Mr. Pitts is also considered a family-oriented individual who is openly dedicated to his wife and child. Mr. Vance knows of no associations that Mr. Pitts has with any individuals who may be suspect in either criminal or intelligence matters.

**Reputation** – Having had the pleasure of working with Mr. Pitts over the last year, EE Vance has become keenly aware of the outstanding reputation Mr. Pitts has in the IT field. He commands professional respect both from his peers as well as his supervisors. He has good interpersonal skills which only contribute to his reputation.

**Loyalty** – EE Vance strongly believes Mr. Pitts has the utmost loyalty to the United States, his family, and to whatever organization or team he is a member. He is a team player and he is dedicated to accomplishing his mission. Again, he is considered an excellent candidate to work within the unique security environment of the FBI.

**Suitability** – EE Vance highly recommends Mr. Pitts to be fully suitable for Bureau employment, especially within the IT field. His background, experience, and expertise, including a Master's Degree, will provide significant value and benefit to the Bureau's IT development efforts. He has the leadership, self initiative, and trustworthiness to function within the FBI environment.

2/2

To: Administrative Services    From:    Investigative Technology
Re:  67D-HQ-1444864, 12/18/2003

**LEAD(s):**

**Set Lead 1:  (Info)**

> ADMINISTRATIVE SERVICES
>
> > AT WASHINGTON, DC
>
> > SE Vance recommends applicant Vincent Pinkney Pitts for
Bureau employment.

CC:    1 - Mr. Grever, QTERF
       1 - Mr. Vance, QTERF

♦♦

3/3



# FEDERAL BUREAU OF INVESTIGATION
## TACTICAL OPERATIONS SUPPORT CENTER
## ENGINEERING RESEARCH FACILITY
### BUILDING 27958A
### QUANTICO, VIRGINIA 22135

August 22, 2005

Commanding Officer
Navy Personnel Command (PERS-921)

Subject:  Letter of Recommendation for Vincent Pinkney Pitts

Dear Sir or Madam:

I am an Electronics Engineer serving as a GS-15 Program Manager for the Tactical Resident Engineering Group within the Tactical Operations Support Center (TOSC), Investigative Technology Division of the Federal Bureau of Investigation. I enthusiastically submit this letter of recommendation for Vincent Pinkney Pitts to support his application for lateral transfer into the new Navy designator known as "Information Professional" or "IP Community" or "designator 1605".

Over the last year Mr. Pitts has been assigned to work on our information technology systems developing applications running on our wide-area network. He has been called in producing and integrating applications that support both the tactical operational missions as well as the business requirements of the TOSC. Our user community of over 100 personnel has experienced an extraordinary improvement and enhancement in the capabilities and tools Mr. Pitts has implemented on the network. The TOSC operational mission is very unique and one-of-a-kind and the user community demands a diverse and heterogeneous mix of functions and capabilities. Mr. Pitts has been meeting this challenge efficiently through state-of-the-art solutions and with the highest level of professionalism and expertise. We are looking forward to his continued support of our information technology systems for the long term.

I firmly believe Mr. Pitts is a perfect candidate for the new Navy designator, Information Professional. He will be highly successful and a significant value added resource to the Navy and the IP Community. Very importantly, Mr. Pitts is a well-rounded, personable, reliable, conscientious, and highly motivated individual with excellent leadership abilities. His interpersonal and leadership skills are mandatory in the information technology field and Mr. Pitts will perform accordingly within the Navy IP Community.

Thank you for consideration of this recommendation and please feel free to contact me for any additional reference or information.

Sincerely,

Daniel P. Vance
Program Manager




67D-HQ-1444864
AR/ar

On 01/13/2004, KENNY BEVERLY, (FBI Employee) ERF Facility, Lorton, VA. 22079, telephone number, 703-339-2704, advised that he has known the applicant since the summer of 2003. He had contact with the applicant on a daily basis. This contact has been professional. This interview covered an 8 month scope.

BEVERLY advised he first met the applicant when they they worked together on various projects while the applicant was a contractor for the FBI. He described the applicant as a very conscientious individual who was totally focused on his assignment, and completing it on time.

The applicant is of good character, associates, reputation, and ability. The applicant is financially responsible and there have not been signs of credit difficulties or unexplained affluence or problems. The applicant is and always has been loyal to the United States, and has not shown bias or prejudice toward any individual or group. During the scope of this background investigation, there were no indications that the applicant is, or had ever, abused alcohol or prescription drugs, or used, purchased, manufactured, trafficked, produced, transferred, shipped, received or sold any illegal drugs.

There has been no indication of any activity or conduct in the applicant's background which could be used in any way to subject the applicant to coercion or compromise and/or would impact negatively on the applicant's character, reputation, judgement, discretion, trustworthiness, responsibility, or loyalty to the United States or which would, should or could have a bearing on the applicant's suitability for federal employment or access to classified information.

BEVERLY recommended the applicant for an IT-Specialist Position with the Federal Bureau of Investigation.



(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                    **Date:** 12/10/2003

**To:** Administrative Services    **Attn:** [            ] **Rm.** 6658

**From:** Investigative Technology
          Technical Operations Section/TOSC/ACBU
          **Contact:** Val G. Kerrigan

**Approved By:** [                    ]

**Drafted By:** Kerrigan Val G                **b6**

**Case ID #:** 67D-HQ-1444864   (Pending)    **b7C**

**Title:** VINCENT PINKNEY PITTS
           BUAP - IT SPECIALIST


**Synopsis:** This communication responds to EC lead from WFO
dated 12/09/03 under same caption requesting acquaintance
comments from ITD/TOS/TOSC/ACBU SSA Val G. Kerrigan.

**Details:** The following are comments regarding the
relationship between the captioned applicant and SSA Val G.
Kerrigan:

     SSA Kerrigan has known the applicant since 2001 when
he worked for Aera Corp. which had the IT support contract
utilized by all TOSC locations. His specialty during that
period was database creation in which he performed in a
superlative manner.

     SSA Kerrigan believes this individual to be a hard
working, diligent, conscientious, extremely talented, and
highly motivated individual. This has been demonstrated on
numerous occasions over the past two years of the relationship
by his creation of two highly complex specialty databases
utilized today by ACBU. His character and trustworthiness are
considered above reproach and his loyalty to the United States
has never been questioned as his pride of being an American is
reflected in the fact he is an officer in the  U.S. Navy
Reserve.



To: Administrative Services   From:   Investigative Technology
Re:   67D-HQ-1444864, 12/10/2003

      In summation, SSA Kerrigan knows of no derogatory
information regarding this applicant and would give him his
highest recommendation for employment to the FBI.

2





R



Cargill Creek
Andros
Bahamas

August 18, 2005

I Veronica Lewis of Cargill Creek, Andros Island Bahamas and other visiting families have notice the love how Deloris and Vincent Flitz lived. During my last two (2) years of high school they have taught me how to be an independence and responsible young women to face the world of tomorrow. The year of 1999 had spent about six (6) months living with the two couples in Jacksonville North Carolina, newly married, never one day there was a fuss nor fight, his talk always I love my Bahamas. Mom and couldn't give me a better one out of the Bahamian garden. Deloris and other siblings never had to fight. My family and I visited my sister and her husband every year when they were living in Maryland and now Virginia, there was no times of any types of arsing or fighting occurred always happiness. Vincent Flitz is man of pride and dignity, talking about loyalty and faithful to his family and country you can't choose a better person, Last year my sister warned me saying that they are unable to come to the Bahamas. In return to the conversation my mother and I along with my two (2) son want to see her nothing more I did like spending three weeks of summer break with Vincent and Deloris their things is never to greed for the family to used. Vincent reminds me about my (thousand fishes) he always love his wife nobody comes before her and his sibling, he was a role model for them also they are a role model for me who has been married four (4) years. The bible quotes gives touch so many lives not just spiritually or emotionally that gift of LOVE has inspired in them the life they live will speak for them like the word of GOD will stand when heaven and earth will pass away. We the family members of Deloris and Vincent Flitz love will always be in our hearts and mine, the family that prays together will always stay together, this moment has been written from the bottom of our HEART of LOVE.

I declare under penalty of perjury that the foregoing this true and correct to the best of my knowledge and belief.

Veronica Lewis, Olga Seymour
Clavina Neymour   Antonietta Bain
Doris Bain   Richard Lewis
Henricka Bain
Henry Bain



Mr. And Mrs. Edward Pitts, Sr.
██████████████████

6712 Valmede Drive
Baltimore, Maryland 21207
410-265-0042

August 4, 2005

To Whom It May Concern:

Vincent Pitts is a very loving son and brother. A mature attitude and positive image were projected by Vincent even in his youth. He has always been a model husband and father.

We have observed Vincent and Delores to be committed to their marriage and family. The relationship appears to be based on mutual love, trust and respect. They are dedicated and loving parents.

Delores and Vincent seem to compliment each other in all sizes. Delores has lovingly supported Vincent in his educational and professional endeavors. She has willingly deferred her career goals to provide a loving and nurturing environment for her family.

Vincent is a very hardworking husband and father. He takes pride in providing a "good life." He seems to have a deep appreciation for his wife and child for an anniversary celebration, a sweet romantic evening was planned by Vincent to show his love for his wife.

Devin is the joy of their lives. He is a bright, happy and confident child. The warmth and love that fills their home is reflected in Devin.

Sincerely,

*Edward C. Pitts, Sr.*
*M. Yvonne Pitts*

Sworn to and subscribed before me
this ___4___ day of ____Aug.____, 2005
Witness my hand and official seal

My Commission Expires 12/18/06



August 4, 2005

To Whom It May Concern:

I, Shakara Ramesar, am the niece of Vincent and Delores Pitts. I am deeply concerned about the false accusations that were made in regards to their marriage. I have lived in their home off and on in the past four years and can testify that they both truly love and respect each other.

Maybe if I shed some light on their characters and personalities to you, you would understand my outrage. Vincent and Delores are the kindest, outgoing, loving people you will ever meet. Their marriage is one of love, strength, and integrity; an example for all others to follow. When one hurts so does the other. When one is discouraged the other lifts his or her spirit.

In my darkest hour, when I needed help, they took a very pregnant me into their home. They showed and taught me what unconditional love is. I am no longer considered a niece, but as a daughter and my children, as their own. Family is one of the most important things that they value in life.

So you see, I hurt for them and my soul cries out, no, demands justice for them! These false accusations have hurt them emotionally; tainted what they hold dear and took the sparkle out of their eyes. No longer are they that happy go lucky couple without a care in the world; but now a very analytical set.

The only good that has come from this so far is that they know their love can endure anything and that they are surrounded by people who love and support them. However, my aunt and uncle deserve more. They deserve to know that the country they love and live in will not fail them and keep justice from their grasp.

All I ask is that you please give the Pitts Family what is due to them.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Sincerely yours,

Shakara Ramesar

STATE OF VIRGINIA.
City/County of: Stafford, to-wit:

I, *Laurie A. Showers*, a Notary Public in and for the jurisdiction aforesaid, do hereby certify that the foregoing *Correspondence* was acknowledged, subscribed, and sworn by Shakara Ramsar , before me on this 26th day of August 2005.

**Notary Public**

My commission expires: 7/31/2008.



August 4, 2005



Whom it may concern:

My name is Janyelle "Quessa" Roberts, and I am a African American female. I have been close friends with Vincent & Delois Pitts since 1999. They are my daughters god parents, and they love her dearly. We see each other @ least 5 times a week. I have never seen any signs of abuse toward Delois or anyone else in the family. The Pitts are a very happy couple, and they love their family and friends

Your Truely,
Janyelle Roberts

**STATE OF VIRGINIA.**
City/County of: Stafford, to-wit:

   I, *Laurie A. Showers*, a Notary Public in and for the jurisdiction aforesaid, do hereby certify that the foregoing *Correspondence* was acknowledged, subscribed, and sworn by T̲a̲n̲g̲e̲l̲l̲e̲ ̲R̲o̲b̲e̲r̲t̲s̲ before me on this 26th day of August 2005.

                                              Notary Public

My commission expires: 7/31/2008.



67D-HQ-1444864
AR/ar

On **PENNY I. EARLE,** ███████, Fredicksburg, VA, 22405, telephone number ███████, ███, (telephone interview), advised that he has known the applicant since 1999. She has contact with the applicant on a daily basis. This contact has been social/professional. This interview covered a 5-year scope.

EARLE advised she first met the applicant through his wife, she and the applicants wife worked together at the photo lab at WALMART. She described the applicant as a loyal, devoted individual who appears to be family oriented. EARLE stated she and the applicant and his family have maintained a social relationship over the past 5 years and she has found the applicant be an outstanding friend whom she could trust and respect.

The applicant is of good character, associates, reputation, and ability. The applicant is financially responsible and there have not been signs of credit difficulties or unexplained affluence or problems. The applicant is and always has been loyal to the United States, and has not shown bias or prejudice toward any individual or group. During the scope of this background investigation, there were no indications that the applicant is, or had ever, abused alcohol or prescription drugs, or used, purchased, manufactured, trafficked, produced, transfered, shipped, received or sold any illegal drugs.

There has been no indication of any activity or conduct in the applicant's background which could be used in any way to subject the applicant to coercion or compromise and/or would impact negatively on the applicant's character, reputation, judgment, discretion, trustworthiness, responsibility, or loyalty to the United States or which would, should or could have a bearing on the applicant's suitability for federal employment or access to classified information.

EARLE recommended the applicant for an IT-Specialist position with the Federal Bureau of Investigation.

To: Whom It May Concern:

I Penny J. Eads have known Vincent and Delores Pitts for several years. I often visit or speak with them on a regular and our families often vacation together. I meet Delores first while working at Wal-Mart in Manassas, VA in 1999-2000 and were introduced to her husband and son shortly after. While working at Wal-Mart we have established a lifelong friendship among our families. Pitts are very well respected among their families and friends. In all the years that I've known Vincent and Delores Pitts I have never seen Vincent neither Delores do anything to hurt, harm or endanger one another or their family in anyway. The Pitts have been true and faithful friends from the first day that I meet them and are very true to their word.

This letter is true to the best of my knowledge of what I know and have seen of my friends Vincent and Delores Pitts when we are together.

Penny J. Eads



August 26, 2005

To whom it may concern:

Re: Character Reference for Vincent and Delores Pitts

The purpose of this letter is to provide a character reference for Vincent and Delores Pitts whom I have known as friends for a period of five years.

Over the past few years, I have gotten to know the Pitts Family very well and I feel it puts me in the right standing to provide a fair assessment of their character.

The words I would use to describe Vincent and Delores Pitts are kind, generous and honest people who have a willingness to help other whenever possible.

Vincent as a friend is hard-working and committed to his family as evident with the time he spends with his son Devin during their father/son movie nights and video game tournaments. Leading by example is why Vincent is a role model for his son and his nephews. He will have fun with them but make sure that a lesson is learned from every situation both good and bad.

As a friend, Delores is loyal, supportive and sensitive to the needs of others; she is able to see things from the perspective of others. Delores is always willing to help by volunteering in her son's classroom, at church, helping family/friends organize special events and even with the occasional ride from the commuter train station on short notice.

They are both committed to the education for themselves and their son, Devin. Both parents help him study school material and have made financial and personal sacrifices so they could send him to Sylvan learning center for additional assistance. Delores takes classes for nursing and Vincent takes training classes to stay abreast of new advancements in the computer programming field.

There is nothing negative I could think of about this couple. They are both admirable and well-balanced individuals possessing a wealth of positive qualities.

Sincerely,

Tyranise L. Harris
Tyranise L. Harris

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

State of Virginia
County of Stafford
Acknowledged before me by Tyranise L. Harris this 26th day of August, 2005.

Donald A. Rutledge    Notary    My Commission expires: July 31, 2007



TO WHOM IT MAY CONCERN:

I am pleased to write this letter to provide a character reference for Mr. Vincent Pitts. Mr. Pitts and I are colleagues and friends.

We have known each other for 04 years and 10 months. During the year 2001 we have worked closely on projects at Verestar Corporation and have also become friends since. His attention to detail and conscientious approach to his work provides superior service and quality to our company and customers. He works very well on our team, providing both leadership and technical skills to our program.

Since I have known Mr. Pitts, he has displayed honesty and integrity in all he does. There has been no indication of otherwise questionable activity.

I would gladly welcome an opportunity in the future to work with Mr. Pitts again. He has certainly been an asset to the program, and I believe would excel in his future endeavors.

I am US Citizen and currently working for SAIC (Science Applications International Corporation as a System/Software Engineer. My nationality is Vietnamese.

I DECLARE UNDER OATH AND PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON: August 02, 2005

Anna Leong

Anna L. Leong

vince.txt



Dear Sir or Madam,

I met Vincent Pitts while working for a company located in Fairfax Virginia called Veristar. Vincent was a great mentor and leader in his role as manager of Application development in the company. He as able to train and guide his team of developers in such a way that learning new technology and growing their skills would drive them to success. We had a very good working relationship with each other and the rest of the IT staff.

We have been friends since 2001. As a friend he is easy to talk to and gives advice when needed. I would say that he is one of my best friends. He was a big source of encouragement while i was going through a period of being laid off from work and when my mother suffered a stroke.

I was born in Kingston, Jamaica and became a nationalized citizen of the united States of American I have completed a Bachelors (1995), Masters (2004) and PHD by February 2006.

I DECLARE UNDER OATH AND PENALTIES OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON:

August 1, 2005

Rickardo O'Bryan Stewart

Page 1

September 6, 2005



**To Whom It May Concern:**

The purpose of this is to provide a reference for Mr. Vincent Pitt whom I have known as a manager and a friend for more than four years.

Vincent was my manager between 2001 and 2002 when I was employed at Verestar. He had the responsibility for managing projects and administering databases. Under his guide, we merged multiple internal web sites to a centralized server so more people in the company were able to access the data. The whole migration was very smooth under his lead. In addition, software releases were always on time.

Vincent also encourages me to take courses in order to improve my technical skills. While he was my manager at Verestar, I was taking my master courses. Vincent, as a manager and a friend, always accommodated my schedule, so neither work nor school was affected by another.

I cannot think of anything negative about Vincent. All the coworkers who knew him at Verestar had considered him as a hard-working and easy-going person. All in all, I would have to say that Vincent Pitt is a great person with abundance of positive qualities.

Sincerely,

Jimmy Zhang

I declare under oath and penalties of perjury that the foregoing is true and correct to my best knowledge and belief.

*Jimmy Zheng*

Jimmy Zheng

Nationality: USA



Character Reference for Mr. Vincent Pitts.

My name is Timothy Oh. I am a naturalized U. S. citizen, originally from South Korea, and I currently have a Secret clearance from Department of Defense.

I have first met Mr. Vincent Pitts in November 2000. He was the manager of the IT department at Interactive Media Corporation (IMC), and he personally interviewed me and hired me as a senior developer. As I started working on IMCIT development team, it became clear to me that Vincent was a not your average manager. He had great technical skills and background. Furthermore, he has provided guidance and assistance for every single member of IT department. When one of the employees had to leave due to the visa situation, Vincent went out of his way to find her a new job. One more than one occasion, he had come back to work at late night to help me with my projects. I consider him as a mentor.

Vincent left IMC and soon after, I left also and followed him to Verestar. Verestar did not have an IT department, and Vincent was already beginning to build a IT department. Initially, our IT department consisted of Vincent (Manager), me (Senior Developer), Anna Leung and Sumeen. Our team had already built and deployed two key projects for Verestar, and was working on integrating Verestar's satellite order system. During this time, Verestar was going through some reorganization.



I declare under oath and penalties of perjury that the foregoing is true and correct.

Executed on: August 4, 2005.

Timothy J. Oh



Recorded Voice Message from Therese Rodrique work phone on 25 and 26 Feb 2004

"You reached the office of Therese Rodrique, Unit Chief of the support application processing unit. I will be out at a conference between Tuesday, Feb 17 2004 and Friday, Feb 27, 2004. I will return on Monday, Mar 1, 2004. If you need immediate assistance, please contact Bonny Adams at ext 0883 or Tammy Carpenter 4966."

Voicemail message was recorded and heard by my wife, mother and closes friends.

Voice recording is included with this transcribed. (Not) ~ ▬▬▬▬
▬▬▬▬